PAUL, ADMINISTRATRIX, *v.* STUCKEY.

Opinion delivered November 20, 1916.

ACTIONS—SERVICE OF SUMMONS UPON NON-RESIDENT ATTORNEY DURING TRIAL.—An attorney, while attending court in his professional capacity in a county other than that of his residence, is not exempt from the service of summons in a civil action brought against him in that county.

Appeal from Pulaski Circuit Court, Second Division; *Guy Fulk,* Judge; reversed.

*Carmichael, Brooks, Powers & Rector,* for appellant.

1.   There is no State statute exempting either local or nonresident attorneys from any legal process. Kirby's Digest,   §§ 3129, 444; 61 Ark. 504; 54 Am. St. 276.

2.   The common law does not allow counsel the privilege of immunity from service of civil process. Weeks on Attorneys, § 107, p. 203; 3 Blackst. Com., §. 289.

3.   The great weight of authority is against the immunity.   35 Ark. 331; 12 L. R. A. (N. S.) 942, and note; 32 *Id.* 931; 198 U. S. 144; 134 Am. St. 886; 7 Words & Phrases, 6787; 89 M. W. 1124; 17 Tenn. (9 Yerg.) 7, 9; 18 Am. 660; 27 Fed. 342, 343; 76 Ark. 161; 1 Phil. 217; 18 Johns. 52; 12 Fed. 590; 11 L. R. A. 101; 67 Am. St. 458; 37 Fed. 342; 110 N. E. 601; 63 L. R. A. 503; 122 N. C. 963; 131 *Id.* 54.

4.   Granting such a privilege would be contrary to reason and public policy.   133 N. C. 292; 45 S. E. 638; 63 L. R. A. 503.

*Campbell & Suits,* for appellee.

1.   In view of the decisions of this court exempting *parties* from service of process, the rule exempting attorneys rests upon the bedrock of the Constitution and public policy.   Art. 2, § 10, Const.; Kirby's Digest, §§ 2273, 444;   31 Ark. 266; 101 *Id.* 216; 3 Blackst. Com. 24, 26; 60 Ark. 207; 207 Fed. 890.

2.   The privilege of attorneys is ascertained by the common law and the great weight of authority. 61 Ark. 504; 76 *Id.* 161; 7 Fed. 17; 15 *Id.* 1130; 54 Am. St. Powers' case; 207 Fed. 890; 4 Call. 97; 15 Johns. 242; 18 *Id.* 52; 15 Fed. Cas. 1126; 18 *Id.* 1138; 1 Phila. 217; 7 Fed. 17; 87 N. Y. 568; 74 Fed. 442; 67 Am. St. 458; 20 Ohio Ct. Ct. 1; 3 Boyce 1; 95 S. C. 49; 207 Fed. 890; 83 S. C. 225.

3.   The privilege is not contrary to reason and public policy.   40 Ark. 263; 60 *Id.* 425 31 *Id.* 767.

WOOD, J.   The appellant filed her complaint against the appellee in the Pulaski Circuit Court, alleging that appellee was indebted to the estate of John P. Paul in the sum of $700, and asking that she, as his administratrix, have judgment for that amount.   She had summons issued.   Appellee is an attorney.   He was engaged in defending one Atkinson, who was on trial charged with a felony in the Pulaski Circuit Court. Appellee, while thus engaged, was called to the door of the court room and the summons issued in the civil suit was served upon him.   Appellee at that time resided in Jackson county.   He moved to quash the service of summons.   The court sustained the motion, dismissed appellant's complaint, and she appeals.

Was the service valid?   The action instituted against the appellee belongs to that class that may be brought in any county in which the defendant is summoned.   Section 6072, of Kirby's Digest.   We have a statute expressly exempting witnesses from being sued in counties where they do not reside, while going, returning or attending in obedience to a subpoena.   Kirby's Digest, section 3129.   But there is no such statute concerning attorneys at law.   They fall, so far as statutory enactment is concerned, within the general class against whom suits may be brought in any county in which the defendant is summoned.   Kirby's Digest, section 6072, *supra.*

The appellee contends that attorneys, while attending court in their professional capacity in counties other than their residence, should be exempt from the service of summons in civil actions against them in those counties under the doctrine announced by this court in *Powers* v. *Arkadelphia Lumber Co.*, 61 Ark. 504, and *Martin* v. *Bacon*, 76 Ark. 158, to the effect that suitors, while in attendance upon judicial proceedings in courts other than that of their residence, are privileged from the service of summons in other adverse proceedings instituted against them in those counties.

In *Powers* v. *Arkadelphia Lumber Co.*, *supra*, we said: "One line of authorities rests the privilege solely

on the familiar constitutional ground of freedom from arrest on civil process, but we prefer to rest it also on the ground of a sound public policy, so aptly expressed by the Supreme Court of Ohio in the case of *Andrews v. Lembeck*, 46 Ohio St. 40, thus: 'The question is one which profoundly concerns the free and unhampered administration of justice in the courts. That suitors should feel free and safe at all times to attend, within any jurisdiction outside of their own, upon judicial proceedings in which they are concerned, and which require their presence, without incurring the liability of being picked up and held to answer to some other adverse judicial proceeding against them, is so far a rule of public policy that it has received almost universal recognition wherever the common law is known and administered.' " And, again, quoting from *Lamkin v. Starkey*, 7 Hun. 479, we said: "The court has power, independently of the statute, to protect its suitors, officers and witnesses."

In *Martin v. Bacon, supra,* we quoted the lanquage of Judge Elliott in *Wilson v. Donaldson*, 117 Ind. 356, as follows: "High considerations of public policy require that the law should encourage him (the non-resident suitor) to freely enter our forums by granting immunity from process in other civil actions, and not discourage him by burdening him with the obligation to submit to the writs of our courts if he comes within our borders."

Public policy is defined as, "That principle of the law which holds that no subject can lawfully do that which has a tendency to be injurious to the public or against the public good; the principles under which freedom of contract or private dealing is restricted by law for the good of the community, the public good." 32 Cyc. 1251. In *Woodruff v. Berry*, 40 Ark. 251, this court approved Lord Brougham's definition of public policy as follows: "Public policy, in relation to this question, is that principle of the law which holds that no subject can lawfully do that which has a tendency to be injurious to the public or against the public good,

which may be termed the policy of the law, or public policy, in relation to the administration of the law." Says the Supreme Court of Rhode Island: "The reasons assigned for the exemption of non-resident suitors are, that courts of justice ought to be open and accessible to suitors; that they ought to be permitted to approach and attend the courts in the prosecution of their claims and the making of their defenses without molestation or hindrance; that they ought not to be distracted from prosecuting their just rights, or making their just defenses to suits by reason of their liability to suit in a foreign jurisdiction." *Baldwin* v. *Emerson*, 16 R. I. 304, 307.

It is shown by numerous authorities collated in the note to *Mullen* v. *Sanborn et al.*, 25 L. R. A. 721, that the rule arose and exists as one of the necessities of judicial administration, because without it, it would be impossible for the courts to fully and freely administer justice. It is there succinctly stated that, "the rule exists in order that causes may be fully heard and justice administered in an orderly manner. The privilege is to subserve public interests."

Now the service of summons in a civil action upon an attorney while engaged in the trial of a cause pending in a county other than that in which he resides does not contravene any doctrine of public policy as above defined, and as announced in our decisions, *supra*. The service of summons is had by delivering to the defendant a copy thereof, or, if he refuses to receive it, by offering him a copy thereof. Section 6042, Kirby's Digest.

We cannot see that the mere service of summons upon an attorney while in attendance upon a court in his professional capacity would in any way infringe upon the dignity or invade the prerogatives of the court. It could not interrupt the orderly progress of trials nor tend in the least to hamper and embarrass the courts in the administration of justice. Therefore, as we view it, the public good would not be adversely affected by

such procedure, and the rule of public policy applicable to suitors does not obtain.

In *Netograph Mfg. Co.* v. *Scrugham,* 197 N. Y. 377, 90 N. E. 962, 134 Am. St. Rep. 886, it is held that (quoting syllabus): "The exemption of a suitor or witness from process is not a natural right, but a privilege having its origin in the necessity for protecting courts from interruption and delay and witnesses or parties from the temptation to disobey process." It "is in derogation of the common natural right which every creditor has to collect his debt by subjecting his debtor to due process of law in any jurisdiction where he may find him, and therefore the privilege should not be extended beyond the reason of the rule upon which it is founded."

Our statute giving a right of action "in any county in which the defendant is summoned" is but declarative of and in conformity with this natural right.

The appellee contends that the rule of public policy declared by this court in *Powers* v. *Arkadelphia Lumber Co.,* and *Martin* v. *Bacon, supra,* exempting non-resident suitors from the operation of the statute should also be extended, by analogy, to attorneys at law while attending in their professional capacity upon judicial proceedings in counties other than that of their residence. This contention is unsound.

The reason upon which the rule is founded, as we have shown, is that it is to the public interest and for the public good that courts should be untramelled in their efforts to administer justice between parties to causes pending before them. Parties litigant are entitled to be heard in court by themselves and counsel. In criminal prosecutions the accused is guaranteed this right by express constitutional and statutory law. Art. 2, section 10, Const. 1874; Kirby's Digest, section 2273. So far as the interest of the public is concerned, the ends of justice are fully satisfied when suitors are protected in the right to be heard by themselves and counsel. The selection of counsel by suitors is a matter purely of private concern, and not of public interest.

It is not essential to the administration of justice, and no rule of public policy therefore requires that courts should extend the privilege, which was intended for the protection of its own authority and dignity and to enable it to do justice between the parties, so as to grant immunities to attorneys from their individual liabilities. The attorney is only the *alter ego* of his client, in the limited sense that he may plead in matters pertaining to his client's cause. The attorney is not subject, like the suitor, to the process of the court issued to enable it to carry out its orders in pending causes. He can not stand in his client's shoes as to the consequences of the judicial proceedings. Therefore, it is not necessary for courts, in order to deal out justice between parties litigant, to shield a non-resident attorney from the service of process in a matter that concerns him only, and which in no manner affects his client's cause.

The effect of the service of summons upon a non-resident attorney does not operate, like an arrest, to deprive the client of the services of his attorney, nor does it tend to interfere with the dignity and authority of the court, and thus to delay and obstruct its orderly procedure in the administration of justice. Nor can it be said that the mere service of a summons upon an attorney, while in attendance upon the court could have the effect to so embarrass the attorney and distract his attention from the cause of his client as to virtually deprive the latter of the benefit of counsel and thus deny him his legal right.

When an attorney goes into a jurisdiction other than that of his residence to represent a client before a court in a cause there pending he does so by virtue of private contract and of his own motion. His case is not like that of one who has to attend upon the court as a suitor, a juror, or a witness. He is not under the protection of the court because he is in attendance thereon in obedience to its process or because he has entered its portals as a suitor. While he takes an oath to support the Constitution and laws, and is an officer

of the court in the broad sense that he is licensed to practice before it and is amenable to rules adopted for the dispatch of the business of the court and subject to its orders in conducting any business he may have before the court; yet his employment is private, and while pursuing his practice before the court, he is engaged in his own private business. He does not occupy the relation to the court of one of the officers chosen by the public for the discharge of the public duty of assisting the court in the conduct of its business in the administration of justice. But if he did, there is no rule of public policy requiring the court to shield even its officers from the service of process in civil actions, unless the service of such process would tend to impair the authority and dignity of the court and to obstruct the administration of justice.

We can not see that the mere service of a summons in a civil action upon any of the officers of the court while in the discharge of their duties would in any manner reflect upon the dignity of the court, or lessen its authority, or impede the administration of justice.

Our attention is directed by learned counsel for appellee to quite a number of cases in support of their contention that the privilege extends to attorneys as well as to witnesses and parties. We have examined these cases carefully, and it would too greatly extend this opinion to review them *seriatim*.

Mr. Blackstone says that, "attorneys and all other persons attending the courts of justice (for attorneys being officers of the court, are always supposed to be there attending) are not liable to be arrested by the ordinary processes of the court, but must be sued by a bill, called usually a bill of privilege, as being personally present in court." 3 Blackstone's Commentaries, star page 289.

In 8 Bacon's Abridgment, "Privilege," B. page 171, it is said: "And it hath lately been laid down by the court of C. P. as a general rule, that all persons who have relation to a suit which calls for their attendance, whether they are compelled to attend by process

or not, are entitled to privilege from arrest *eundo et redeundo*, provided they come *bona fide*. And in this description bail and barristers upon the circuit are included.''

In 1 Tidd's Practice, it is said: ''The parties to a suit and their attorneys and witnesses are, for the sake of public justice, protected from arrest in coming to, attending upon and returning from the courts.''

''It was an ancient privilege of attorneys,'' says Mr. Weeks, ''to be exempt from arrest on *mesne* process, or being held to bail, because attorneys, being obliged to attend officially, and, as the law presumes, continuously, upon courts, they were always amenable to their own courts, and could not be drawn away to attend others. *** These privileges arose from the supposition that the business of their clients would suffer by their being drawn elsewhere.'' Weeks on Attorneys, sections 107-108, and cases cited in note.

''An arrest,'' says Mr. Blackstone, ''must be by corporal seizing or touching the defendant's body.'' 3 Blackstone's Commentaries, star page 288. See, also, *Huntington* v. *Schultz* (S. C.), Harp. 452-3, 18 Am. Dec. 660.

Perhaps the strongest case cited by counsel for appellee is that of *Brooks* v. *State, ex. rel. Richards*, 3 Boyce (Del.) 1, 79 Atl. 790, 35 Am. & Eng. Ann. Cas. 1133, where it is said: ''The privilege of parties to judicial proceedings, as well as witnesses, attorneys, judges, jurors and certain other officers of the court, of going to the place where they are held, and remaining as long as necessary and returning wholly free from the restraint of process in other civil proceedings, has been long settled and liberally enforced. The rule is of ancient origin and is mentioned in the Year Books as early as Henry VI. It came to us out of the common law with only such modifications as were required to make its principle harmonize with American institutions and to be in accord with American jurisprudence. * * * The privilege arises out of the authority and dignity of the court, it is founded on the necessities

of judicial administration, it has for its principal object the protection of the court, and not the immunity of the person, and is extended or withheld only as judicial necessities require."

There was a time in England when men, however honest they may have been, if unable to pay their debts, were subject to arrest and imprisonment in the tower. This barbarous practice prevailed from the enactment of the "Statute of Merchants," in 1288, until it was finally abolished in the reign of Victoria, in 1868. Statutes 32 and 33, Vict., p. 571.

There was also a long period in England when, under the influence and domination of a rampant ecclesiasticism, kings and popes alike granted numerous scandalous immunities and privileges to a favored few of special classes. World's History and its Makers, vol. 1, p. 362; 1 Green's History of England, p. 164, *et seq.*

It is not surprising, therefore, that this doctrine of privilege from arrest should have taken root and flourished in the soil of England at a time when it was rich in the production of special privileges, and when poor, but honest, men had to live in mortal dread of being arrested and imprisoned for debt. It is easy to see that in such times witnesses, jurors, suitors and attorneys might be intimidated from attendance upon the courts, and that the courts would therefore be hampered in the administration of justice, and hence the necessity for extending the privilege from arrest to these persons while going to, attending upon and returning from the courts.

Thus arose the above doctrine of the common law which some American courts attempt, by analogy, to apply in this country. But there is no analogy. For here the whole fabric of government rests upon the principles of equality and liberty, and the doctrine of equal rights to all and special privileges to none finds expression not only in the Constitution of the United States, but in the organic law of every State in the Union.

We can readily understand how the arrest of an attorney during the progress of a trial, in the presence of the court, which would necessitate his giving bail, or else being removed from the court, would seriously encroach upon the dignity of the court and disturb its orderly procedure, and deprive the suitor of his right to be represented by the counsel of his choice, and also deprive the court of the aid of such counsel. But the service of a copy of a summons upon counsel, which is merely a notice to him that proceedings have been instituted against him in another jurisdiction, could have no such effect. There is no analogy whatever between the service of process of summons and the service of capias. All the reasons therefore for the common law doctrine of privilege from arrest wholly break down in this country when they are attempted to be applied to the mere service of summons. Every reason for the rule having failed, the rule itself should fail.

To hold that non-resident attorneys are immune from the service of summons, or other process, not in arrest, while they are voluntarily in attendance upon the court upon their private business would be to confer upon them a special privilege not enjoyed by resident attorneys. *Kutner* v. *Hodnett*, 109 N. Y. Supp. 1068. "The reason upon which those decisions are based" that so hold, as stated by the Supreme Court of North Carolina, "is not satisfactory to us." *Greenleaf* v. *People's Bank of Buffalo et al.*, 133 N. C. 292, 63 L. R. A. 499. We agree to the conclusions reached by Ch. J. Clarke in his concurring opinion in that case. It occurs to us that those decisions follow rather loosely the doctrine of the common law without a proper analysis and consideration of the reasons upon which such doctrine was founded.

The framers of our code, who were presumably familiar with the doctrines of the common law, only exempted witnesses from being sued in counties other than that of their residence. Our court has exempted suitors, on the ground of public policy, and by this

appeal we are asked to exempt non-resident attorneys. To do so would be approving a doctrine which is contrary to the genius of our institutions, and which should have no place in the jurisprudence of this country.

If we are correct in our conclusion that no rule of public policy in the administration of justice is infringed by denying the privilege to attorneys, then there. is no more reason why the privilege from service of summons should be granted to them than to those of any other profession or business calling. To do so would put the courts in the attitude of establishing a highly discriminatory class privilege in favor of the legal profession.

In the case of *Elam* v. *Lewis*, 19 Ga. 602, a lawyer claimed the benefit of privilege from arrest because of the fact that he was a practicing attorney in that State. Judge Lumpkin, rendering the opinion of the court, among other things, said: "Any decision which separates the bar from the people in sympathy or identity of privilege would prove one of the greatest curses which could befall the profession. From the day when it is made the bar itself will receive an impulse downward in the eyes of the community. * * So extensive a question should be determined upon the broad foundation that the general justice of the country should alike pervade all walks and professions." So we say.

The judgment is therefore reversed and the cause remanded with directions to overrule the motion to quash.

HUMPHREYS, J., not participating.