[L. A. Nos. 13488, 13589. In Bank.—November 28, 1932.]

WINSTON MURREY, an Infant, etc., Respondent, v. CHARLES T. MURREY, Appellant.

Gerald Bridges for Appellant.

William Ray Schirmer, James S. Jarrott and Jarrott & Schirmer for Respondent.

WASTE, C. J.—Defendant appeals from an order granting temporary support and maintenance *pendente lite* (L. A. No. 13488) and from a final judgment granting such support and maintenance to plaintiff, minor child of the defendant (L. A. No. 13589). By stipulation of the parties the appeals have been consolidated.

The facts upon which the appeals are based are as follows:

Defendant is admittedly a resident of Utah. While temporarily present in San Francisco, California, for the purpose of training as a reserve officer of the 57th Coast Artillery, Regular Army Inactive, defendant was served with the summons and order to show cause in the present action, which had been commenced by plaintiff in the county of Los Angeles. The action is one by a minor child to compel the defendant, his father, to contribute to his support. The complaint alleges that defendant and plaintiff's mother were married in Los Angeles in 1918; that defendant deserted his wife in Oregon in January, 1919; that plaintiff was born as the lawful issue of that marriage in March, 1919; that plaintiff's mother secured a divorce from defendant in

Oregon in 1920 and, by that decree, was awarded custody of plaintiff; that no provision was made in the decree for the support of plaintiff, because personal service could not be secured on defendant, he then being absent from the state; that, after the divorce had been secured, plaintiff and his mother returned to Los Angeles; that at the present time plaintiff's mother is without means to support, maintain, and educate the plaintiff; that heretofore the mother has supported plaintiff on funds borrowed for that purpose, but plaintiff's mother can no longer secure funds in that fashion; that defendant has never contributed toward the support of plaintiff, who is now thirteen years of age, although defendant is employed at a salary of $250 a month and has other sources of income.

The summons and order to show cause were served on defendant in San Francisco, August 16, 1931. On September 2, 1931, defendant appeared specially and objected to the jurisdiction of the court and moved to quash service of summons, on the ground that he was exempt from service of civil process. No affidavits were filed by defendant and the motion was denied without prejudice. At the same time the court granted the application of plaintiff for maintenance *pendente lite* and for costs. On September 8, 1931, defendant again filed a special appearance and again moved to quash the service of the summons and order to show cause. On this occasion defendant filed an affidavit in support of his motion. The affidavit recites that defendant is a resident of Ogden, Utah; that on July 10, 1931, defendant received a special order from his superior officers of the United States Army, requiring him to report for active military duty at Fort Winfield Scott, California; that in obedience to said order he left Ogden, Utah, and went into the active service of the United States government; that while he was engaged in such service he was served with the summons and order to show cause; that but for the order requiring him to report for active duty he would not have been within this state. The material allegations of this affidavit were not controverted except that plaintiff submitted a certified copy of an application, signed by defendant, requesting active duty as a reserve officer. This request was certified to by R. F. Woods, colonel, Coast Artillery Corps, executive of organized reserves, who likewise certified that

"existing regulations require this or a similar form to be made by the officer before he can be ordered to active duty training". This second motion by defendant was likewise denied and, defendant failing to answer, the lower court entered his default and then duly entered judgment against defendant for $50 a month for support and maintenance, and for costs and attorney's fees.

The sole question presented on these appeals is whether, as a matter of public policy, under the particular facts of this case, defendant, as a nonresident reserve officer of the United States Army, being temporarily within this state on active duty in time of peace, is to be held exempt from service of process.

Defendant admits that if the exemption exists in his favor, it exists solely as a matter of public policy. There is neither a federal nor a local statute conferring the exemption.

Under the common-law rule as developed in England, there is no doubt that the exemption here claimed did not exist. Under the early common-law rule, the exemption extended only to parties to judicial proceedings and their witnesses, and members of the court, whose duties required their attendance upon the court and whose presence was necessary to the court in the performance of its functions. Originally this privilege of exemption from service was deemed a privilege of the court and not a privilege of the individual. In more recent years, it has come to be recognized as a substantive right of the individual. It has been frequently stated that this "judicial" privilege exists as a matter of established public policy and rests upon sound principles of justice and right. (*Filer* v. *McCornick,* 260 Fed. 309; *Stewart* v. *Ramsay,* 242 U. S. 128 [61 L. Ed. 192, 37 Sup. Ct. Rep. 44].)

This exemption from service of process is, of course, in derogation of the right which every creditor has to collect his debt by subjecting his debtor to suit in any jurisdiction where he may find him. Since this is so, the privilege should not be extended beyond the reason of the rule upon which it is founded. (*Fitzhugh* v. *Reid,* 252 Fed. 234.) California, as a matter of public policy, recognizes this "judicial" exemption. (*Hammons* v. *Superior Court,* 63 Cal. App. 700 [219 Pac. 1037].)

By statutory or constitutional provision, many states have extended the privilege to members of legislative bodies, although in many jurisdictions this exemption extends only to freedom from arrest and does not extend to service of process in a purely civil action. (21 R. C. L. 1303, sec. 47.)

 In addition to the above-enumerated situations, in recent years the privilege has, in some instances, as a matter of public policy, been extended to all nonresidents within the jurisdiction engaged in the performance of a public duty, at least during times of emergency. (50 Cor. Jur. 557, sec. 246.) Perhaps the leading case on this subject is *Filer* v. *McCornick, supra*. In that case plaintiff was a resident of California and defendant was a resident of Utah. Defendant was the president of a Utah bank, which bank was a member of the federal reserve system. During the year 1918 the federal government was actively engaged, through its financial agencies, in selling its securities for the purpose of raising funds for the carrying on of the war against the central powers of Europe, then in active progress. In this district the banks had failed to sell the quota of such securities assigned to them. The governor of the federal reserve bank called a conference of all bankers in this district to meet in San Francisco on August 9, 1918, to discuss the emergency. Defendant was specifically requested to attend this conference. He came to California for that purpose and while here was served with process in a civil action. The court held that although defendant, in one sense, had entered the state voluntarily, that fact was immaterial, because he had come to this state to perform a public duty during a time of national emergency. It was, therefore, held that defendant was immune from service as a matter of public policy. The basis of the court's decision is to be found in the following quotation:

"It is not, and certainly may not be, claimed that in attending that conference he was not performing a public service of the greatest moment to the government and of interest to the country. One cannot readily conceive of a higher duty to their country—except it be on the battlefront—than was being performed by the members of that conference, when we consider the urgent and absolute necessities of the government for means with which to finance the gigantic struggle in which we were then engaged; money at such a

time may be said to be the lifeblood of a nation. But it is said that defendant was not 'compelled' to attend; that there was no power in the president of the Reserve Bank to require his presence; that therefore he must be regarded as coming of his own volition, and hence is not in a position to invoke this privilege. As to that, neither is a nonresident witness, nor a party, for that matter, 'required' to attend a trial. If they come they do so of their own volition, and for the furtherance, in any particular instance, of merely private interests. It would be a singularly inconsistent public policy that dictated the protection of such a class, and denied it to those engaged in serving solely the public good. Such a policy would very probably have deprived the country during the critical period through which we have just passed of services of the highest value, gratuitously rendered, by the large number of patriotic citizens who, like the defendant, dropped their private interests, and betook themselves far from their homes to render aid to the administration of a character which could not have been coerced. It is at least doubtful if those citizens would have given the same ready response to the dictates of their patriotic sense of duty had they been advised that the law was powerless to afford them protection against liability to harassing litigation to which they might be subjected by private suitors in strange and remote jurisdictions.''

Defendant contends that the theory of the Filer case, *supra*, applies in the instant case. He contends that he was in this state solely for the purpose of performing a public duty and that, therefore, on grounds of public policy, he should be held to be exempt from service. As a matter of public policy, it is undoubtedly true that during a time of war or other national emergency, the exemption discussed in the Filer case, *supra*, would be extended to those in the military service. In fact, during the period of the last war the United States government saw fit to pass a general moratorium statute exempting from all civil process those engaged in the military service. (Act of March 8, 1918, chap. 20, sec. 100.) This act was subsequently repealed.

It is conceivable, of course, that a rule that applies during a period of great national emergency might not be applicable to a situation where no such emergency exists. No case seems to have been decided by the courts of this state

on the question presented. The few authorities from other jurisdictions are in hopeless conflict. Some jurisdictions have statutes conferring the exemption. In some states the statutes provide that one engaged in military service shall be exempt from arrest. In these jurisdictions some courts hold that the exemption should be extended, as a matter of public policy, to civil process. (*Land Title & Trust Co.* v. *Rambo*, 174 Pa. 566 [34 Atl. 207].) Other jurisdictions refuse to extend the exemption beyond the terms of the statute. (*Hart & Foster* v. *Flynn's Exr.*, 38 Ky. (8 Dana) 190; *Kirkpatrick* v. *Irby*, 3 McCord (S. C.), 205.) Iowa apparently holds that the exemption from civil process exists independently of statute. (*Northwestern Cas. & Surety Co.* v. *Conaway*, 210 Iowa, 126 [230 N. W. 548].)

It must be conceded that if the exemption exists in favor of defendant, it exists solely as a matter of public policy. Since this is so, each case must be determined on its own particular facts. The convenience of the United States government, and the possible interference with the efficiency of the army; the convenience of the parties and the nature of the action involved; the rights of this state—all these factors are important in determining whether as a matter of policy the exemption should be granted. It is hard to believe that the efficiency of the military forces of the United States during a time of peace will be impaired materially by subjecting reserve officers to service of civil process in any jurisdiction where they may be stationed temporarily. The nature of the present action must likewise be considered. This is an action by a destitute minor child to compel his father to contribute to his support. Highest considerations of public policy require that parents support their children, both in the interests of the child and in the interests of the state. No claim is made by defendant that in the defense of this action it would be necessary to bring witnesses from Utah. No claim is made that the suit is being pressed in this jurisdiction for the purpose of persecuting defendant. The defendant is employed at a salary sufficient to defray partially at least the expenses of the child. Defendant has never contributed to the support of the child. The child is without funds to go to Utah to enforce its right to support. Moreover, defendant could have

been prosecuted criminally in failing to support his child. (Sec. 270, Pen. Code.)

Another factor to which some slight weight should be given is that defendant was not forced to come to this state against his will. He voluntarily requested to be assigned to active duty, and without such request, the record shows, he could not·have been compelled to serve. Even after his assignment to active duty in this state, he could have been excused from active service by simply filing a written request to be excused. Army Regulations, No. 140–5, as approved April 16, 1931, in section 54, provide:

"Reserve officers will be ordered to active duty for 14 days' training in each fiscal year in the numbers permitted by appropriations and at such places as training facilities are available. In order that undue hardship may not be worked on individual officers on account of conflict with business or personal affairs, corps area commanders and chiefs of arms and services will excuse officers from such active duty upon their written request."

Under these circumstances, and considering all of the various factors involved, as we are required to do, and considering the fact that such exemptions should be granted only when highest considerations of policy require it, we are of the opinion that public policy does not require that the privilege of exemption from service in this action should be extended to defendant.

For the foregoing reasons the order and judgment appealed from are and each is hereby affirmed.

Langdon, J., Preston, J., Curtis, J., Seawell, J., Shenk, J., and Tyler, J., *pro tem.*, concurred.