VIRGINIA MOSELEY, Executrix, Appellee, v. ARQUILLA RICKS, Appellant.

No. 43831.

JUNE 15, 1937.

REHEARING DENIED OCTOBER 29, 1937.

Stull, Lucier & Elmquist and Philip Baim, for appellant.

Joseph F. Smith, for appellee.

SAGER, J.—■■■ It appears from the record that Moseley, executrix of the estate of La Var, contended that the appellant was indebted to her in her representative capacity for moneys alleged to have been wrongfully obtained by appellant from La Var during his lifetime. It appears, too, that an action had been brought in the courts of Illinois by the decedent in his lifetime to recover this money, but for some reasons not disclosed that cause was dismissed. Thereafter the action out of which this appeal arises was started in Polk county. Appellee argues that, because the action in Illinois which appellant contested involved the money which would have been hers on the successful outcome of the will contest pending in the Iowa courts, she waived the rights to immunity from process which would otherwise have been hers. We perceive no basis for this contention, and it will have no further attention herein.

Following the receipt by appellant of the money for which she was sued in Illinois, La Var was brought to Iowa by his sister, appellee herein, and shortly before his death made a will which had the effect of cutting off the appellant from any rights in La Var's estate. Appellant filed a contest in Polk county, alleging that the proposed will was executed at a time and under conditions which disqualified it for probate. In this contest appellant proposed a previous will by which she was made the sole

beneficiary. It will be seen that if the will last in point of time had been set aside and the earlier one sustained, appellant would have accomplished the result which would have followed success in the Illinois suit, to wit, all the property of La Var would have been hers, including the amount sued for here.

■■ While in attendance on the hearing of the contested will, an original notice was served upon her making her a party defendant in the instant case. Thereupon she filed her special appearance under section 11088 of the Code, basing such special appearance on the fact that she came into this state only as a party in interest in the will contest, to be a witness therein, and for the purpose of consulting her attorney, coming, she says, no earlier than was reasonably necessary to be in attendance and staying no longer than was reasonably necessary after the case was submitted. The court having overruled the special appearance, appellant appealed.

A consideration of the facts disclosed by this record persuades us that the court was in error, and we so hold.

From earliest times it has been the policy of the courts to hold nonresident parties and witnesses immune from the writs and processes of local courts while such nonresidents were in attendance upon the courts or other judicial or semi-judicial proceedings pending before the local tribunals; and this policy has been uniformly observed until the present. This principle seems so conducive to the proper administration of justice that we are not disposed to overrule it.

An extensive note with the collection of the earlier cases, will be found in the note to Mullen v. Sanborn, 25 L. R. A. 721, from which we quote as follows:

"Courts of justice ought to be open and accessible to suitors, who ought to be permitted to approach and attend the courts in the prosecution of their claims, and the making of their defenses without fear of molestation or hindrance; their attention ought not to be distracted from the prosecution or defense of the pending suit, otherwise they might be deterred from prosecuting their just rights or making their just defenses to a suit by reason of their liability to suit in a foreign jurisdiction. Baldwin v. Emerson, 16 R. I. 304 [15 A. 83, 27 Am. St. Rep. 741].* * *

"The immunity does not depend upon statutory provisions, but is necessary for the due administration of justice.* * *

"The privilege, however, has been held to be not that of the person attending, but of the court which he attends."

While the earlier cases appear to declare the principle of privilege as one belonging to the court rather than to the person claiming the immunity, later decisions seem to lay stress upon the idea that it belongs to the witness or the party.

The views we hold are well expressed in a note to Murrey v. Murrey, 85 A. L. R. 1335, at page 1341. We quote:

"The immunity from service of civil process of witnesses while attending a trial in a state other than that of their residence to give evidence, and, by the great weight of authority, of suitors, both plaintiffs and defendants, is so well recognized that it will not be extensively discussed herein. As said by the court in Murrey v. Murrey (reported herewith) [216 Cal. 707, 16 P. (2d) 741, 85 A. L. R. 1335], the exemption from service of civil process, extended at common law to parties to judicial proceedings and their witnesses, and members of the court whose duties required their attendance upon the court and whose presence was necessary to the court in the performance of its functions, was originally deemed a privilege of the court, and not one of the individual. In 21 R. C. L. page 1307, it is said: 'This privilege which is accorded to parties or witnesses is not a natural right; on the contrary it is in derogation of common right. The rule is of ancient origin, and is mentioned in the Year Book as early as Henry VI. It came to us out of the common law, with only such modifications as were required to make its principle harmonize with American institutions, and to be in accord with American jurisprudence. The reason for granting this immunity is varied, some placing it as a personal privilege to the suitor or witness, and others as good public policy that a court should not be hampered by having those in attendance on it pounced on by other litigants. The rule was primarily established for the protection of the courts, that they might the better administer justice, free from interference with and intimidation of suitors, solicitors, and witnesses, and disturbance of the court's officers in the exercise of their duties. It becomes a privilege affecting persons in their several capacities only as their protection from process renders the administration of justice more certain and complete. In other words, the privilege of the individual is incidental; the protection of courts of justice is the

primary object of the rule. No one is hurt by this exemption, since, if it did not exist, the nonresidents would not go into the foreign state, and service of summons on them could not be made anyway.' ''

In the comparatively recent case of Kelly v. Shafer, 213 Iowa 792, at page 794, 239 N. W. 547, 548, we expressed the same view in this language:

''Immunity from civil process of a nonresident while in attendance as a witness *bona fide* and for a reasonable time thereafter is allowed, in the interest of the administration of justice and as a matter of public policy. The case is ruled by Murray v. Wilcox, 122 Iowa 188, 97 N. W. 1087, 64 L. R. A. 534, 101 Am. St. Rep. 263; Northwestern Casualty & Sur. Co. v. Conaway, 210 Iowa 126, 230 N. W. 548, 68 A. L. R. 1465.''

Somewhat earlier, in Northwestern Cas. & Sur. Co. v. Conaway, 210 Iowa 126, 127, 230 N. W. 548, 549, 68 A. L. R. 1465, speaking through Justice Stevens, we approved the rule in the following language:

''The rule that nonresident suitors and witnesses in attendance upon a trial in a foreign jurisdiction are, for a reasonable time, immune from the service of process upon them therein is of general application. [Citing cases.]

''This rule, as stated in a number of the cases cited above, is, in reality, founded on the necessities of judicial administration, which, as said in Stewart v. Ramsay, supra [242 U. S. 128, 61 L. Ed. 192, 37 S. Ct. 44], '* * * would be often embarrassed, and sometimes interrupted, if the suitor might be vexed with process while attending upon the court for the protection of his rights, or the witness while attending to testify. Witnesses would be chary of coming within our jurisdiction, and would be exposed to dangerous influences, if they might be punished with a lawsuit for displeasing parties by their testimony; and even parties in interest, whether on the record or not, might be deterred from the rightfully fearless assertion of a claim or the rightfully fearless assertion of a defense, if they were liable to be visited on the instant with writs from the defeated party.' ''

The principle announced in the foregoing citations has been carried even to the extent of holding that one coming into a

state at the solicitation of his adversary for the purpose of discussing compromise of a matter in dispute, is immune from service of process in an action on the disputed claim until after the lapse of a reasonable period to enable him to return to his home. See State of Montana ex rel. Ellan v. District Court, 97 Mont. 160, 33 P. (2d) 526, 530, 93 A. L. R. 865, at page 870, from which we quote:

"The general rule is that when a nonresident party to an action, or a witness, comes into the state for the sole purpose of attending a trial, he is immune from the service of process during his attendance and for a reasonable period thereafter to enable him to return to his home. Stewart v. Ramsay, 242 U. S. 128, 37 S. Ct. 44, 61 L. Ed. 192; Page Co. v. Macdonald, 261 U. S. 446, 43 S. Ct. 416, 67 L. Ed. 737; State ex rel. Coe v. District Court, supra [73 Mont. 265, 235 P. 766]. According to the weight of authority, this rule applies to all proceedings which are in their nature judicial, whether taking place in court or not (50 C. J. 554, and cases cited), and to attendance upon the taking of depositions to be used in the trial of a cause (50 C. J. 555, and cases cited). The rule has been extended to include a party attending the examination of witnesses to be used on a trial of his case (Plimpton v. Winslow [C. C.], 9 F. 365), and to such a one who comes into a foreign jurisdiction at the request of his counsel, to be present during the argument on a demurrer (Kinne v. Lant [C. C.], 68 F. 436)."

Since the principle announced in the last-cited case is not before us, we defer expressing an opinion thereon until it arises in a proper case.

A consideration of these cases, and others which might be cited, persuades us that the rule announced therein is sound and so conducive to the fair administration of justice that we are not disposed to overrule it.

It follows that the decision of the trial court is reversed.—Reversed.

Chief Justice and all Justices concur.