### FISHBEIN v. THORNTON et al.
### No. 15084.

Court of Civil Appeals of Texas. Dallas.
March 31, 1952.

Edward M. Burke, Chicago, Ill., Scurry, Scurry & Pace, Dallas, for relator.

Herbert K. Hyde, Oklahoma City, Okl., James Martin, Thompson, Knight, Wright & Simmons and Pinkney Grissom, Dallas, for respondents.

CRAMER, Justice.

The above matter having been submitted March 31, 1952, at 10:00 A.M., after hearing argument, the majority of the Court denied the application of Morris Fishbein, relator, for leave to file an application for a writ of prohibition, or in the alternative for a writ of mandamus. Mr. BOND, Chief Justice, in his opinion filed March 31, 1952, gave a statement of the history leading up to the filing of the application for permission to file petition for writ of prohibition, or mandamus, and it will not be repeated.

The record before us shows, in addition to that stated in Judge BOND'S opinion, that after the State court petition was filed in the 44th District Court of Dallas County, one of the defendants in said cause, Morris Fishbein, on December 22, 1950, filed in the action of Harry Hoxsey his plea to the jurisdiction, and subject thereto certain motions, exceptions and general answer; that on December 28, 1951 relator Fishbein's plea to the jurisdiction of the District Court was heard by the trial judge and overruled. It also appears from the application for the writ, tendered with the motion to file the same, that such cause is set for trial in the 44th District Court of Dallas County on April 2, 1952. The only material question raised in the application for the writ of prohibition and/or mandamus is the jurisdiction of the 44th District Court of Dallas County to try the cause of action alleged by Hoxsey against Dr. Fishbein. Our Supreme Court in the case of York v. State, 73 Tex. 651, 11 S.W. 869, and since then, has uniformly held that under our Texas Practice any appearance by the defendant in a cause in a Texas State Court is sufficient to give such court jurisdiction, and that a written answer for the purpose of pleading to the jurisdiction of the court is a voluntary appearance which brings the defendant before the court and subjects him to its jurisdiction. An answer, in our practice, is as follows:

Texas Rules of Civil Procedure, rule 85: "The original answer may consist of pleas of privilege, to the jurisdiction, in abatement, or any other dilatory pleas; of special exceptions[,] of general denial, and any defense by way of avoidance or estoppel, and it may present a cross-action, which to that extent will place defendant in the attitude of a plaintiff. Matters in avoidance and estoppel may be stated together, or in several special pleas, each presenting a distinct defense, and numbered so as to admit of separate issues to be formed on them."

Under such Rule, a plea to the jurisdiction is a part of the answer. The U. S. Supreme Court has held such Rule constitutional. In York v. State of Texas, 137 U.S. 15, 11 S.Ct. 9, 10, 34 L.Ed. 604, in denying an attack upon such Rule, that Court held:

"It was conceded by the district and the supreme courts that the service upon the defendant in St. Louis was a nullity, and gave the district court no jurisdiction; but it was held that, under the peculiar statutes of the state of Texas, the appearance for the purpose of pleading to the jurisdiction was a voluntary appearance, which brought the defendant into court. * * * The difference between the present rule in Texas and elsewhere is simply this: Elsewhere the defendant may obtain the judgment of the court upon the sufficiency of the service without submitting himself to its jurisdiction; in Texas, by its statute, if he asks the court to determine any question, even that of service, he submits himself wholly to its jurisdiction. Elsewhere he gets an opinion of the court before deciding on his own action; in Texas he takes all the risk himself. If the service be in fact insufficient, all subsequent proceedings, including the formal entry of judgment, are void; if sufficient, they are valid. And the question is whether, under the constitution of the United States, the defendant has an inviolable right to have this question of the sufficiency of the service decided in the first instance and alone. The fourteenth amendment is relied upon as invalidating such legislation. That forbids a state to 'deprive any person of life, liberty, or property without due process of law.' And the proposition is that the denial of a right to be heard before judgment simply as to the sufficiency of the service operates to deprive the defendant of liberty or property. But the mere entry of a judgment for money, which is void for want of proper service, touches neither. It is only when process is issued thereon, or the judgment is sought to be enforced, that liberty or property is in present danger. If at that time of immediate attack protection is afforded, the substantial guaranty of the amendment is preserved, and there is no just cause of complaint. The state has full power over remedies and procedure in its own courts, and can make any order it pleases in respect thereto, provided that substance of right is secured without unreasonable burden to parties and litigants. Antoni v. Greenhow, 107 U.S. 769, 2 S.Ct. 91 [27 L.Ed. 468]. It certainly is more convenient that a defendant be permitted to object to the service, and raise the question of jurisdiction, in the first instance, in the court in which suit is pending. But mere convenience is not substance of right. If the defendant had taken no notice of this suit, and judgment had been formally entered upon such insufficient service, and under process thereon his property, real or personal, had been seized or threatened with seizure, he could by original action have enjoined the process, and protected the possession of his property. If the judgment had been pleaded as defensive to any action brought by him, he would have been free to deny its validity. There is nothing in the opinion of the supreme court or in any of the statutes of the state of which we have been advised gainsaying this right. Can it be held, therefore, that legislation simply forbidding the defendant to come into court, and challenge the validity of service upon him in a personal action, without surrendering himself to the jurisdiction of the court, but which does not attempt to restrain him from fully protecting his person, his property, and his rights against any attempt to enforce a judgment rendered without due service of process, and therefore void, deprives him of liberty or property, within the prohibition of the fourteenth amendment? We think not. The judgment is affirmed."

The defendant, Fishbein, when he filed his answer, submitted himself to the jurisdiction of the 44th District Court,

which court now has jurisdiction. See also Hughes v. Hughes, Tex.Civ.App., 221 S.W. 2d 1003.

 The judgment of the District Court overruling the plea to the jurisdiction was interlocutory and not appealable. This Court therefore has no jurisdiction to issue a writ of prohibition or mandamus as prayed for. Texas Constitution, Art. 5, sec. 6, Vernon's Ann.St. The motion is denied.

BOND, C. J., having amended his original opinion, now joins the majority in the overruling of such motion.

BOND, Chief Justice (concurring).

Relator Morris Fishbein has presented motion for leave to file application for writ of prohibition, or, in the alternative, for writ of mandamus. A brief history leading up to this controversy is reflected from relator's application will be enlightening as to the issues here presented.

On September 27, 1948 Harry M. Hoxsey filed suit in the 44th District Court in Dallas County, Texas (No. 26,139–B) against Morris Fishbein, William Engle, W. R. Hearst, Jr., American Weekly, Hearst Consolidated Publications, Inc., and American Medical Association, seeking to recover damages for libelous publication. That suit was removed to the U. S. District Court at Dallas. A trial to the merits was had on March 16, 1949 only against the Hearst Publications, a nonsuit having been taken against the other defendants, they not having been served with citation. On March 18, 1949 judgment was entered dismissing Fishbein, Engle and certain other named defendants, without prejudice, and in favor of plaintiff Hoxsey against Hearst Consolidated Publications, Inc., for $2, Hoxsey v. Fishbein, D.C., 83 F.Supp. 282, which judgment was paid and the plaintiff Hoxsey executed a full and complete satisfaction and discharge of that judgment.

While the cause was being tried in Federal Court, on March 18, 1949, Fishbein came to Dallas at the request of the defendants for the sole and only purpose of testifying in such suit. On arrival in Dallas he went directly to a hotel, and on the next morning he was served with a subpoena to appear as a witness to testify on behalf of the defendants. After breakfast, he went directly to the office of the attorneys for defendants, where he remained until going to the Federal Court in response to the subpoena. He remained outside the door of the courtroom until called to testify, and after finishing his testimony walked out of the courtroom, and as he did so was served with citation issued out of the 44th District Court of Dallas County in suit entitled Harry M. Hoxsey v. Morris Fishbein, No. 31,011–B, which had theretofore been filed in said Court on March 18, 1949,—same being the identical suit filed in the Federal Court. Immediately after the citation had been served, Fishbein went to his hotel, checked out, and en route to depart by airplane for Chicago, stopped to see a friend who was ill.

On March 22, 1949 Hoxsey amended his petition in the suit filed in the District Court and made Millard Heath, a resident citizen of Dallas County, Texas, a party defendant; whereupon Fishbein filed a petition for removal to the U. S. District Court, which, on hearing, was remanded back to the State court because of Heath, a resident of this State, being made a party defendant. The relator, per amicus curiae, then filed plea to the jurisdiction of the State court on ground that he came into the State of Texas for the sole purpose of testifying in the U. S. District Court in the suit there pending, and that while in Texas he did nothing other than testify as such witness and did not attend any other activities of any nature or kind and was immune from process issued out of any other Court while in Texas for that purpose. Subject to such plea to the jurisdiction, relator, per amicus curiae, filed his motion to dismiss on the grounds of res adjudicata, estoppel by judgment, release of joint tort feasor, satisfaction, discharge, etc., together with other motions and exceptions, and upon hearing, on December 28, 1951, the court entered its order overruling each of said motions and set the cause for trial on its merits on April 2, 1952.

In the light of the record here presented there is only one question for our review, that is, the immunity of Morris Fishbein, a nonresident witness, from service of the process; and, if so, it follows that this Court should issue writ of prohibition against the extrajudicial order of the court below.

The question of whether a nonresident can voluntarily come into the State for the sole purpose of testifying in a case pending in this State and be immune from service of process upon him issued out of another court, is of extreme importance to the jurisprudence of Texas. The general rule is stated in 42 Am.Jur., p. 119, sec. 139, as follows:

"Our courts, with practical unanimity, accord to nonresidents of a state who come within the territorial limits of the state to testify as witnesses in judicial proceedings therein an immunity or privilege from the service of civil process while in actual attendance at the trial or hearing and during such reasonable time as may be consumed in going to and returning from the place of trial. * * * The rules governing immunity of witnesses and parties to judicial proceedings, and of the court officials, from service of process while attending court, are of very ancient origin. References to them are found in the Year Books of England as early as Henry VI. They came to us out of the common law with only such modifications as were required to make the principle underlying them harmonize with American institutions and accord with American jurisprudence."

The rule is further stated in 72 C.J.S., Process, § 80, p. 1113, substantially as above; and further, on page 1117, id., it is said:

"* * * The exemption rests on grounds of public policy and the due administration of justice, which require that every reasonable method of ascertaining the whole truth in matters before the court should be open to the court, since the court would be often embarrassed and sometimes interrupted if the suitor might be vexed with process while attending on the court for the protection of his rights or the witness attending to testify. It is in the public interest that nonresident suitors and witnesses be encouraged to appear voluntarily, and not deterred from so doing; and unless immunity from service of civil process is given they might be deterred from attending through fear of being subjected to the burden of new litigation, and delays might ensue and injustice be done. Therefore, the courts should protect them against possible litigation by granting immunity from service of civil process and thus removing the liability to such litigation.

"It has also been said that the exemption is founded on the principle that, where the law exacts a duty from any person it will protect him in the discharge of it, and that individuals cannot demand the use of public civil process so as to arrest or interfere with others in the performance of public duties or of duties required by public process; and that immunity granted a nonresident witness does not work any injustice to anyone, since, unless he comes within the state, there will be no opportunity to serve any process on him."

In Lovejoy v. Foster, 77 F.Supp. 414, 415, arising in the U. S. District Court at Dallas, it appears that the plaintiff filed suit in one of the State District Courts of Dallas against WRR Radio Station and the Mutual Broadcasting System, seeking damages for an alleged defamation of character by reason of a broadcast. Foster was not a party to that suit, but came into the State for the sole purpose of testifying for the defendants. While Foster was in Dallas, solely for that purpose, the plaintiff filed a suit against him in the State Court on substantially the same cause of action. Foster removed the suit filed against him to the U. S. District Court and there moved to dismiss the suit on the ground of immunity from service. The

Federal judge at Dallas dismissed the case and in his opinion, said:

"The immunity that a witness enjoys from process servers while attending court for another, is neither new nor novel. It is based upon wholesome public policy. For many decades prior to Stewart v. Ramsey, 242 U.S. 128, 37 S.Ct. 44, 61 L.Ed. 192, the reasonableness of that position, was recognized and has since been recognized by many expressions in both the federal and state courts. Hale v. Wharton, C.C., 73 F. 739; Rix v. Sprague Machinery Co., 157 Wis. 572, 147 N.W. 1001, 52 L.R.A., N.S. 583; Davies v. Lutz, 110 Kan. 657, 205 P. 637; 21 R.C.L. 1305; Sherman v. Gunlach, 37 Minn. 118, 33 N.W. 549; State ex rel. Brainard v. District Court, 34 Wyo. 288, 243 P. 123; Wilson v. Donaldson, 117 Ind. 356, 20 N.E. 250, 3 L.R.A. 266, 10 Am. St.Rep. 48; Lingo v. Reichenbach Land Co., 225 Iowa 112, 279 N.W. 121; Bolgiano v. Gilbert Lock Co., 73 Md. 132, 20 A. 788, 25 Am.St.Rep. 582; Person v. Grier, 66 N.Y. 124, 23 Am. Rep. 35; Wheeler v. Flintoff, 156 Va. 923, 159 S.E. 112; Kelly v. Pennington, 78 Colo. 482, 242 P. 681, 45 A.L. R. 339; Paul v. Stuckey, 126 Ark. 389, 189 S.W. 676, L.R.A.1917B, 888."

The above is perhaps the only expression on the issue of immunity decided in Texas. The reasons for granting immunity are varied in the different states of the Union and the reasons therefor are well stated as against public policy and better administration of justice free from interference. See Moseley v. Ricks, 1937, 223 Iowa 1038, 274 N.W. 23; Murrey v. Murrey, 1932, 216 Cal. 707, 16 P.2d 741, 85 A.L.R. 1335; Wilson v. Donaldson, 117 Md. 356, 20 N.E. 250, 3 L.R.A. 266; Harris Foundation v. District Court, 196 Okl. 222, 163 P.2d 976, 162 A.L.R. 272; Murray v. Wilcox, 122 Iowa 188, 97 N.W. 1087, 64 L.R.A. 534.

In so far as the writer's investigation has extended, the courts have uniformly extended this privilege of immunity not only to those who attended before the court on the actual trial, but also to those who attended as witnesses or suitors in the taking of depositions. It seems that the privilege of immunity is not uniform in all jurisdictions. For instance, in the case of State ex rel. Weast v. Moore, 164 Mo. App. 649, 147 S.W. 551, a nonresident claimed privilege from service in attending upon court in Missouri as a suitor at the time process in another case was served upon him. The court held, following Baisley v. Baisley, 113 Mo. 544, 21 S.W. 29:

"If we determine the question (of immunity) by the weight of authority, it must be answered in the affirmative. In Mullen v. Sanborn, 79 Md. 364, 29 A. 522, 25 L.R.A. 721, * * * the authorities are collected in a note, consisting of 18 pages; and an examination thereof will disclose that the authorities are practically unanimous, and hold that a nonresident party to a suit cannot be served with process while temporarily within the state for the purpose of attending as a party and a witness. * * *

"If we are not bound by controlling decisions of our own court (Baisley v. Baisley), we would be inclined to adopt the rule supported by this great weight of authority".

The quotation of authorities may be extended to include many decisions of federal courts and state courts of numerous states which hold that a nonresident witness in a pending suit is exempt and immune from service of citation on him in another suit while in the state in attendance on court as a witness.

From the facts as set forth in relator's petition, not controverted by respondents, the relator having taken all steps possible to protect his immunity from service, and there being no appeal from an order overruling the plea to the jurisdiction, his only remedy is to seek extraordinary writ in this court.

The trial court having no jurisdiction of the relator Fishbein, under the circumstances as related, we now turn to the question of whether or not this Court has jurisdiction to afford him relief. The

**410**

Constitution of Texas, Art. 5, sec. 6, Vernon's Ann.St. provides:

"* * * Said Court of Civil Appeals shall have appellate jurisdiction co-extensive with the limits of their respective districts, which shall extend to all civil cases of which the District Courts or County Courts have original or appellate jurisdiction, under such restrictions and regulations as may be prescribed by law. * * * Said courts shall have such other jurisdiction, original and appellate as may be prescribed by law."

By statute, Art. 1823, R.S. 1925: "Said courts and the judges thereof may issue writs of mandamus and all other writs necessary to enforce the jurisdiction of said courts."

In the case of Morse v. Scott, Tex.Civ. App., 130 S.W.2d 1041, 1045, it was held by majority of this court, the writer here dissenting on other grounds than here presented, with approval of the text in 50 C.J., sec. 56, p. 682, that "if the proceedings complained of are clearly beyond the jurisdiction of the inferior court or tribunal, and must ultimately be held to have been mistaken, prohibition should issue before the party aggrieved is put to the difficulties that would be raised, and the court to the inconvenience that would ensue, by permitting such proceedings to continue." See 73 C.J.S., Prohibition, § 15. Also, in sec. 57, p. 683, it is said:

"Prohibition may issue notwithstanding another remedy for the grievance complained of is available if such other remedy would not afford complete and adequate relief. To be adequate the concurrent remedy must be sufficient to afford the relief the case demands. * * * the prosecution of other remedies, or the delay or inconvenience incident thereto. The fact that the action complained of is about to be taken in violation of express statutory provisions may be considered."

In City of Houston v. City of Palestine, 114 Tex. 306, 267 S.W. 663, 664, the Supreme Court said:

"Being known to the common law, it is obvious that the language of the Constitution and statutes relating to Courts of Civil Appeals is broad enough to include, and was intended to embrace, the power and authority to issue writs of prohibition. * * *"

The question involved here is whether this Court can grant a writ of prohibition or mandamus in a case which has never reached this Court. We have a situation where as order has been entered by the trial court from which there is no appeal. Where an inferior court is assuming jurisdiction which it does not have, to wit, jurisdiction over the relator Fishbein, under the related authorities, supra, the question then is whether this Court can prohibit the district court from assuming jurisdiction. In 33 Tex.Jur. 923, is this language:

"The writ of prohibition is an extraordinary writ, issued by a superior court to an inferior judicial tribunal to prevent the latter from assuming jurisdiction in a matter over which by law it has no control, or from exceeding its jurisdiction in a matter of which it has taken cognizance. * * *."

Also, at page 929, we find this language:

"Although there is authority to the effect that a Court of Civil Appeals may not exercise this power except in aid of its appellate jurisdiction, the later decisions definitely hold that the court may also issue original writs of prohibition in proper cases."

In the case of Browne v. Rowe, 10 Tex. 183, it is said:

"This writ issues from a superior Court, and is directed to the judge and parties in any suit in an inferior tribunal, commanding them to cease from the prosecution thereof, upon a suggestion that either the cause originally or some collateral matter arising therein does not belong to that jurisdiction, but to the cognizance of some other Court. (Black, Vol. 3, pp. 112, 113.) This, in substance, is the defini-

-tion of the writ. Its purpose is to re-strain the encroachment of the juris-diction of inferior courts, and it is extended to a great variety of cases, having a more or less intimate relation with its general object."

In Stone v. Kuteman, Tex.Civ.App., 150 S.W.2d 107, the court quotes with approval the rule in 50 C.J. 654, para. 3, with reference to such a writ, wherein it is said:

"Prohibition, at common law, was a remedy against encroachment of juris-diction. Its office was to restrain sub-ordinate courts and inferior judicial tribunals from extending their juris-diction. In adopting the remedy the courts have almost universally pre-served its original common law nature, object and function." See 73 C.J.S., Prohibition, § 2.

In 22 R.C.L. 2, para. 1, with reference to such a writ, we find this language:

"It is commonly defined, substantial-ly, as a writ to prevent the exercise by a tribunal possessing judicial pow-ers of jurisdiction over matters not within its cognizance, or exceeding its jurisdiction in matters of which it has cognizance."

While the language of the Constitution and statutes granting original jurisdiction and power to the Supreme Court to issue writs of prohibition and mandamus is broader than that granted to Courts of Civil Appeals, yet the Supreme Court, ow-ing to the great volume of business com-ing before it, requires that application for such writs be presented to the Court of Civil Appeals in the first instance. Dallas Ry. & Terminal Co. v. Watkins, 126 Tex. 116, 86 S.W.2d 1081. In that case the Su-preme Court quoted with approval from Houtchens v. Mercer, 119 Tex. 244, 27 S. W.2d 795:

"Since we have concluded that the Court of Civil Appeals has the power to issue the writ of mandamus, and such other writs ancillary thereto as may be necessary to protect the re-lator in every right he has under the law, it is the rule that we should or-dinarily decline to take jurisdiction under our original power to issue the writ of mandamus until the relator has applied to the Court of Civil Appeals for such relief, if any, to which he may be entitled."

In the case at bar on the issues, supra, it will be seen that we have uncontro-verted facts on which only one judgment could have and should have been rendered in order to protect a nonresident coming into this state solely for the purpose of testifying in a case being tried in this State; and there being no appeal from the order overruling relator's plea to the ju-risdiction, such nonresident witness should not be compelled to submit himself to the jurisdiction of the court in Texas and sub-ject himself to the inconvenience, delay and expense incident to the trial.

However, be that as it may, it has almost uniformly been held that a general ap-pearance is entered by a defendant when-ever the defendant invokes the judgment of the court in any way on any question; hence the defendant here having presented in the court below varied motions as re-lated in Justice CRAMER'S opinion, invok-ing the jurisdiction of the court, effectively made his personal appearance, irrespective of the error I think in the trial court's overruling his motion attacking the service of citation, supra. In consequence I am in accord with the conclusion that defend-ant's motion to file application for the ex-traordinary writ of prohibition or manda-mus be denied.