MARIA LOUISA MULFORD et al.

*v.*

HORATIO J. MULFORD.

1. Under a gift of one-half of the income of testator's estate to his wife for life, and of the other half to his son until he becomes thirty years old, followed by a gift to his wife and son, "during the years above limited" of the use and occupation of his mansion-house, furniture &c., with a provision that the son may have the house set off to him at any time as part of his share, "subject to the before-mentioned privilege" of his wife in those premises—*Held,* that the wife took a life estate in the homestead property; that the taxes thereon and the cost of ordinary repairs should be paid by the trustees out of the income, and that the widow is not entitled to the $200 exemption under *Rev. p. 762 § 52,* because such reservation would conflict with the terms of the will.

2. Where the testator gives the income of a portion of his estate to A for life, but does not dispose of the *corpus* in a certain contingency, it will, in case the contingency occurs, go to testator's heirs if realty, or next of kin if personalty, who were such at his death.

Mulford v. Mulford.

3. A widow and son, to whom is given the income of the residuary estate, are entitled thereto from the time of the testator's death.

4. The proceeds of the sale of building stone taken by the executors from quarries on the testator's land, opened and worked by him, are part of such income.

5. A power to mortgage lands given to the executors to sell at their discretion (in case they cannot sell advantageously), in order to pay borrowed money or to keep the property in good condition, does not authorize the payment of money borrowed on mortgages by the testator himself on such lands, but has reference to money borrowed by the executors to keep up the property; and the interest on such mortgages should be paid out of the income of the estate.

6. An executor appointed by the surviving executor in the place of one deceased, under a provision in the will, is also clothed with the trust estate in the place of his predecessor.

---

Bill for construction of will and instructions to executors. On final hearing.

*Messrs. Potter & Nixon,* for complainants.

---

NOTE.—A life tenant has a right to use a mine for his own profit where the owner of the fee opened it in his lifetime, *Gaines* v. *Green Pond Mining Co.,* 6 Stew. Eq. 603; *Crouch* v. *Puryear,* 1 Rand. 253; *Hendrix* v. *McBeth,* 61 Ind. 473; *Lenfers* v. *Henke,* 73 Ill. 403; *Westmoreland Coal Co.'s Appeal,* 85 Pa. St. 344; and so of a granite quarry, *Owings* v. *Emery,* 6 Gill 260; and a slate quarry, *Billings* v. *Taylor,* 10 Pick. 460; and a limestone quarry, *Moore* v. *Rollins,* 45 Me. 493; *Lynn's Appeal,* 31 Pa. St. 44; see *Freer* v. *Stotenbur,* 2 Abb. App. Dec. 189; *Kier* v. *Peterson,* 41 Pa. St. 357; and turpentine trees, *Carr* v. *Carr,* 4 Dev. & Bat. 179; and shingle trees, *Macaulay* v. *Dismal Swamp Land Co.,* 2 Rob. (Va.) 509; *Ballentine* v. *Poyner,* 2 Hayw. 110; and, it seems, a fair proportion of timber, *Parkins* v. *Coxe,* 2 Hayw. 339; *Jackson* v. *Brownson,* 7 Johns. 227; *Hastings* v. *Crunckleton,* 3 Yeates 261; *Neel* v. *Neel,* 19 Pa. St. 323; *Johnson* v. *Johnson,* 2 Hill Ch. 277, 296; *Harker* v. *Christy,* 2 South. 717; see *Porch* v. *Fries,* 3 C. E. Gr. 204; *Whitfield* v. *Bewit,* 2 P. Wms. 240.

In *Daly* v. *Beckett,* 24 Beav. 114, an estate, with the mines and minerals, "was settled, with power in the trustees to demise the hereditaments and the coal and minerals &c."—*Held,* that the royalty reserved by their lease was payable to the tenant for life, and did not form *corpus;* see *Thursby* v. *Thursby,* L. R. (19 Eq.) 395; *Vivian* v. *Jegon,* L. R. (1 C. P. 9, 2 C. P. 422), 3 H. of L. 285.

In *Spencer* v. *Scurr,* 31 Beav. 334, a testator demised all the seams of coal under his estate, but only two seams were worked or known of in his lifetime. After his death, a lower seam was discovered, which could only be worked by

Mulford *v.* Mulford.

THE CHANCELLOR.

Horatio J. Mulford, late of Bridgeton, in this state, died July 16th, 1885. By his will, dated March 3d, 1884, he first directed that his executors pay all his just debts and funeral expenses. By the second section he gave to his wife, in fee, in lieu of dower, a house and lot in Wenonah, in this state, and a house and lot in Bridgeton, together with certain other interests thereinafter particularly specified, in his personal and real estate. By the third he devised and bequeathed, gave, granted and conveyed unto his executors all the residue and remainder of his estate, real and personal, of which he should die seized and possessed, for the following uses, viz.: one-half of the income of it for the use of his wife for life, and the other half for the use of his son, Horatio J. Mulford, until he should become thirty years of age; the testator's wife and son, "during the years above limited," to have the use and occupation of the house and lot where the testator resided, on the northeast corner of Atlantic and Vine streets, in Bridgeton, together with the household

a new shaft. A new lease of the mines was granted after the testator's death. —*Held*, that the tenant for life, under his will, was entitled to the annual profits arising from the new seam. See *Elias* v. *Snowdon Slate Co.*, *L. R.* (*4 App. Cas.*) *454.*

In *Bagot* v. *Bagot, 32 Beav. 509*, it was held to be a question of degree, to be established by the evidence, whether the working of a dormant or abandoned mine by a tenant for life is waste or not.

In *Cowley* v. *Wellesley, 35 Beav. 635, L. R.* (*1 Eq.*) *656*, the trustees of a will felled some trees for the purpose of improving the growth of those remaining, but during the testator's lifetime the trees had not been thinned, although the underwood had been cut out.—*Held*, that the produce of the trees was capital, and not income going to the life tenant.

In *Dickin* v. *Hamer, 1 Dr. & Sm. 284*, a widow was allowed to claim one-third of the income of the proceeds arising from the royalties of mines opened after her husband's death, but that she was not entitled to one-third of the royalties as *corpus*.

In *Miller* v. *Miller, L. R.* (*13 Eq.*) *263*, the royalties derived from a brickyard, owned and opened by the testator, were held to go to a tenant for life under the will, which devised such field to testator's trustees to sell, and the royalties accumulated for ten years while they were waiting for a favorable opportunity to do so.

In *Campbell* v. *Wardlaw, L. R.* (*8 App. Cas.*) *641*, a testator directed his trustees to pay to his wife "the whole annual produce and rents of the residue

Mulford *v.* Mulford.

furniture contained therein, and also to have the use and occupation of his horses, carriages and riding equipments and his stable and lawn at the southeast corner of those streets, to within one hundred feet of the line of Ludy's lot. He directed that after the death of his wife the income of one-half of his estate should be used as his executors might chose to dispose of it; that in the event of his son's death before attaining the age of thirty years, and before the death of his wife, the income of one-half of the estate should be used as his executors might chose to dispose of it, and that in the event of his son's death before arriving at the age of thirty years, and after his, the testator's, wife's death, all of the estate be disposed of as his executors might choose. And he directed his executors, when his son should have attained the age of thirty years, to set off, according to the best of their judgment, one-half his estate, and assign, set over, grant and convey it to his son, to the sole use of his son, his heirs and assigns, forever; and that should his son desire to have the house, lot, stable and lawn which, at the time of making the will, were occupied by the testator, included in his half of the estate, they might be so set off to him, subject to the before-mentioned privilege of the testator's wife in those premises; the remaining

of his estates, both heritable and movable." Coal and iron mines were leased by the testator before his death. His trustees afterwards leased others.—*Held,* that the wife was not, in law, entitled to the rents of the mines opened after testator's death.

In *Wallington* v. *Taylor, Sax. 314,* a contingent fee in lands was devised to the defendant, and his estate therein charged with the payment of a legacy of $5,000, in annual sums of $500 each.—*Held,* that the defendant could cut the timber from the premises, in order to make the annual payments, if the interests of the remaindermen were not thereby injured.

In *Findlay* v. *Smith, 6 Munf. 134,* a devise of certain salt works to testator's wife for life, with large legacies charged thereon, was construed as authorizing her to make an *unlimited* use of the salt minerals, and also of testator's woodland, from which he obtained fuel to carry on the works in his lifetime.

In *Reed* v. *Reed, 1 C. E. Gr. 248,* lands were devised to executors for the life of testator's brother, with remainder over, and with a right in the brother to occupy the premises on paying a specified rent to testator's sisters.—*Held,* that such brother, who is in possession of the premises, could dig and sell sand from old sand pits thereon, which had been so used by the testator in his lifetime. See *Viner* v. *Vaughan, 2 Beav. 466.*—Rep.

half of the estate, after the wife's decease, to be disposed of as the executors might choose. He also provided that his executors might, in their discretion, sell any of his real or personal estate, except that part, the occupation whereof he had given to his wife and son, either at public or private sale, and invest the proceeds for the benefit of his estate, and that if, for any reason, the property could not be sold advantageously, they might mortgage it, so far as necessary, to pay borrowed money, or to keep it in good condition and repair. He appointed his wife and his sisters his executors to carry out the provisions of the will, and added that after the death of any of his executors the survivors or survivor were requested and empowered to appoint other executors to fill any such places as might be thus made vacant by death, until the will should have been wholly executed.

The bill is filed to obtain a construction of the will, and instructions and directions to the executors in the discharge of their duties under it. Numerous questions are presented for decision. Such of them as it is necessary or proper to decide, in order to enable the executors, understandingly and correctly, to perform their duties and discharge their trusts, will be answered. The others, which are based upon a hypothetical state of facts which may never exist, it is not necessary, and it would not be proper, to pass upon at this time.

The gift of use and occupation to the wife in the third section is a gift for life. The will, by the first section, directs that all the testator's just debts and funeral expenses be paid by the executors, and then gives to the testator's wife certain real property in fee. It then gives all the residue and remainder of the estate to the executors in trust for certain uses, viz., one-half of the income of it is to go to his wife for life, and the other half to the use of his son until he shall become thirty years old. He then gives to his wife and son, " during the years above limited," the use and occupation of certain specified real and personal property. The doubt as to the extent of the duration of the wife's estate has arisen from the words just quoted, " during the years above limited." That the testator did not intend to limit the wife's use and occupation to the time when his son would attain to the

age of thirty years is evident from the fact that he provides that if, at that time, his son shall desire that that particular real property shall be set off to him as part of his half of the estate, it shall be done, not absolutely, but " subject to the privilege of the wife thereinabove described," referring to the gift of use and occupation to her. From that provision it is entirely clear that the testator did not intend to limit the wife's use and occupation to the time when his son should attain to the age of thirty years, but meant that she should have such use and occupation for life.

The taxes upon that property, and the cost of ordinary repairs thereto should be paid by the trustees out of the income of the estate. There is nothing in the will to indicate an intention on the part of the testator that those expenses should be paid out of the *corpus* of the estate. So long as, under the will, the wife and son are entitled to joint occupation of the property, each is also entitled to one-half of the income of the estate. The trustees should retain and pay out of the income, before dividing it, the taxes and cost of ordinary repairs upon that property up to the time when the property is to be divided.

The widow is entitled to one-half of the income of the estate for life, and she is entitled to nothing except what is given to her by the will. The $200 exemption, as it is called, would be in conflict with the terms and provisions of the will.

In case the widow should die before the son reached the age of thirty years, her half of the income will go to the trustees, to be disposed of as they shall see fit.

If the son survive the widow and attain to the age of thirty years, one-half of the *corpus* of the estate will go to him under the provisions of the will. The *corpus* of the other half will, in case the widow should predecease the son, go, upon her death, to the trustees, to be disposed of as they may choose.

If the son die before reaching the age of thirty years and the widow survive him, by the terms of the will his half of the income is to go to the executors, to be disposed of as they shall see fit. But the testator makes no disposition in that case of the *corpus*, the half of the income of which is given to her. Although the legal title to that half of the *corpus* is in the trustees, yet

Mulford v. Mulford.

it is not in them beneficially, but only in trust. The general rule is that whenever it appears, upon a conveyance, devise or bequest, that it was intended that the grantee, devisee or legatee should take the legal estate only, the equitable interest, or so much of it as is left undisposed of, will result, if arising out of the settlor's realty, to himself or his heirs; if out of his personal estate, to himself, his executors or administrators. *Perry on Trusts* § *150*. That share of the *corpus* will, therefore, under those circumstances, go to those who at the testator's death were his next of kin or heirs-at-law, according as the property is personal or real.

The income given by the will to the widow and the son is the income of the residuary estate. They are entitled to it from the death of the testator. *Green* v. *Green, 3 Stew. Eq. 451.* The proceeds of the sale of building stone taken by the executors from quarries upon the testator's land, which were opened before his death and never abandoned, are part of such income. *Gaines* v. *Green Pond Mining Co., 6 Stew. Eq. 603.*

The provision that, if for any reason such of the testator's real estate as he has given the executors power to sell cannot be sold advantageously, the executors may mortgage it so far as necessary to pay borrowed money or to keep the property in good condition and repair, has no reference to the payment of money borrowed by the testator himself, but refers to such money as the executors may find it necessary to borrow for the preservation of the estate. They are empowered to borrow money upon mortgage of the property to pay borrowed money or to keep the property in good condition and repair.

The will provides, in the first section, that all of the testator's just debts and funeral expenses shall be paid by the executors, and after the specific gift to his wife, he gives all the residue to the executors. He does not charge his debts, or any of them, upon his real property, in exoneration or in relief of his personal estate. The power to mortgage is not given in connection with any provision for or any reference to the payment of his debts, but in connection with the sale of his real estate. In view of the fact that the executors may not be able to sell advantageously

the real estate which he has empowered them to sell, and hence
may be compelled, in order to keep it up, to expend money upon
it, he authorizes them to borrow such money, if necessary, and
secure the payment thereof by mortgage upon the property, or
to secure the payment of the expenses of keeping the property
in good condition and repair, by such mortgage. The provision
authorizes them to raise or secure the payment of such money
by mortgage of the property, instead of taking it from the
income of the estate, as otherwise they would have been bound
to do. *Combes* v. *Cadmus, 9 Stew. Eq. 382.* It is the duty of
the executors to sell that part of the real estate which they are
empowered to sell, if they can do so advantageously, rather than
to hold it and make expenditures upon it, which are to be paid
for by money borrowed upon mortgage of it, or to mortgage it
to pay the expenses of keeping it in good condition and repair.
The power to mortgage is not a general one, but one which is
to be exercised in a certain contingency, that of the inability of
the executors to sell the property to good advantage, and then it
is to be exercised only so far as necessary.

The interest upon such mortgages should be paid out of the
income of the estate. The object in providing that the money
may be raised upon mortgage is to relieve the income for the
time being of the burden of large expenditures for repairs &c.,
which otherwise it would have to bear. There is no evidence
that the testator intended that the interest should be paid out of
the *corpus* of the estate. The testator's indebtedness for bor-
rowed money is to be paid in the same way as his other debts.
The executors should use their discretion as to selling that part
of the real estate which they are empowered to sell. There is
no absolute direction to convert the property into money, but
merely authority to them to sell it if they see fit.

The gift of income, after the death of the widow, to the exec-
utors, to be used as they may choose to dispose of it, and the
gift of the estate to them in the event of the son's death before
he is thirty years old, and after the death of the widow, to be
disposed of as they may choose, and the gift of half of the
*corpus* of the estate after the death of the widow, in case the

son reaches the age of thirty years, to be disposed of as they may choose, are all absolute gifts, to take effect in the respective contingencies mentioned.

The testator requests and empowers the survivor or survivors, in case of the death of any of the executors, to appoint other executors to fill any such places as may be thus made vacant by death, until the will shall have been wholly executed. The person or persons who may be thus appointed will not only take the place of the deceased executor or executors, so far as the duties of executorship are concerned, but will be clothed with the trust estate in the place of his, her or their predecessor or predecessors.