# CHARLESTON.

E. D. WHITED v. WILLIAM S. PHILLIPS.

(C. C. 292.)

Submitted February 10, 1925. Decided February 17, 1925.

PROCESS—*Non-resident, Voluntarily Submitting Himself to Juris-diction to Answer Indictment, Privileged From Service of Process in Civil Suit.*

A non-resident of West Virginia, who voluntarily and with-out compulsion of law, submits himself to the jurisdiction of a state court, in answer to an indictment therein against him, and who is not at the time a fugitive from justice, is privi-leged while attending court from service of process in a civil suit.

(Process, 32 Cyc. p. 495.)

(NOTE : Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Certified Questions from Circuit Court, Roane County.

Action by E. D. Whited against William S. Phillips. On sustaining demurrers to pleas to declaration, the court cer-tified questions arising thereon.

*Ruling reversed.*

*Ryan & Ryan, Grover F. Hedges,* and *J. W. Lance,* and *Somerville & Somerville,* for plaintiff.

*Wm. C. Sullivan, Chas. E. Hogg,* and *S. P. Bell,* and *Har-per & Baker,* for defendant.

HATCHER, JUDGE:

On the 21st day of September, 1923, the defendant was served in Roane County with a summons in an action of tres-pass on the case in assumpsit. The defendant filed several pleas to the declaration, demurrers to which were sustained by the Circuit Court of Roane County, which, on its own motion, certified here the questions arising on the demurrers to the pleas.

The pleas differ in some respects, but for the purposes here, they may be considered together. The material facts which they allege are as follows:

That the defendant is a non-resident of the State of West

Virginia, and is a citizen and resident of the city of Washington, D. C.; that at the May term, 1923, the grand jury of Roane County returned an indictment against him, charging him with having committed a felony on the———— day of December, 1920,'' in the County of Roane; that at the time charged in the indictment, he was not in West Virginia, had never been in West Virginia prior to that date, was then a resident of the city of Washington, as aforesaid, and was not a fugitive from justice; that on June 20th, 1923, while the defendant was still in the city of Washington, he voluntarily entered into a bond, with approved security, to appear before the Circuit Court of Roane County on September 3rd, 1923; that this bond was transmitted by him to the clerk of said court, who received, approved and recorded the same; that on September 21st, 1923, at the September term of said court, the defendant, in discharge of his bond, and for the purpose of appearing to the indictment against him, and for no other purpose, came to Spencer in Roane County; that within a few hours after his arrival in Spencer, the plaintiff had issued and served on him a summons in this suit; that he remained in said county no longer than was necessary for the purposes of reaching Spencer, appearing in court to said indictment, and returning to his home in the District of Columbia.

Defendant admits his claim of privilege from service of process in this action is not based on statute or decision of this State, but asserts that it is grounded on the common law and the early decisions of the Virginia court, and is upheld by the great weight of authority throughout the United States. The rule that parties to judicial proceedings, as well as witnesses, and court officials, shall be immune from service of process while attending court, is of very ancient origin. Reference is found to it in the Year Books of England, as early as Henry VI. In its inception, its purpose seems to have been merely to prevent the interference in the administration of justice occasioned by the arrest (whether under criminal or civil process) of suitors, attorneys, witnesses, etc. The rule was originally asserted solely as the privilege of the court supporting its authority and

dignity, in order that justice might be unfettered and free from outside interference. Its aim was to secure efficient and orderly trials which could not be had so long as the witnesses and court officials were subject to arrest or intimidation when attending court. As one authority expresses it, the rule was established "as good policy that a court should not be hampered by having those attending it pounced on by other litigants."

Anciently, it would seem, as well as in some of the earlier cases in the States, this rule was limited to exemption of a defendant from arrest, rather than from service of a civil process which did not involve arrest. But, as years went by, the rule was enlarged so as to afford full protection to suitors, witnesses and court officials, from all forms of process, whether in civil or criminal cases. The reasons for the rule have also been enlarged. It is now regarded as the privilege of persons attending court in their several capacities, as well as the privilege of the court. It is well said that if there is ever a time when a man should be relieved of all other concerns, and when he should be permitted to use unhampered his every faculty, it is when he is on trial under charge of a crime. Judicial reasoning also recognizes the right of a man, ordinarily, to be tried by a jury in the vicinity in which he resides, so that he may have such advantage and safeguard there as his conduct and character shall merit. An additional argument for the extension of the rule is that a person should not ordinarily be drawn into a foreign jurisdiction "and there be exposed to entanglements in litigation far from home, which means he shall be attended with augmented expense."

In Volume 8 of Bacon's Abridgment of the old English law, the rule on privilege is tersely stated as follows:

"The law not only allows privileges to officers of the court, but also protects all those whose attendance is necessary in courts; so that if a suitor is arrested either in the face of the court, or out of the court, as he is coming to attend and follow his suit, or upon his return, it appears upon complaint made thereof, that the fact was so, the court will not only discharge the party from arrest, but will punish

the officers or bailiffs, as also the plaintiff (a) who procured the arrest, as for a contempt to the court."

\* \* \* \* \*

"The privilege extends to arrests on judicial as well as on mesne process; and to the service of a summons as well as·to an arrest."

Pages 168-171.

A leading case on this rule in Virginia is that of *Commonwealth* v. *Ronald,* decided at the November term, 1786, and reported in 4 Call 98, in which it was held: "Judges, attorneys and witnesses, and suitors are exempt from arrest in civil suits during their attendance at court."

A; leading authority on the subject goes so far as to call the rule now, *a universal rule.*

> Sec. 18. NON-RESIDENT ATTENDING JUDICIAL PROCEEDINGS. "The right of the citizen to be sued in the courts having jurisdiction over the place of his domicile is an elementary principle, and from it springs a personal privilege, which is one·of the reasons of the universal rule that a resident of one county or state is exempt from the service of civil process while attending a judicial proceeding in another.
>
> \* \* \* \* \*
>
> While the rule is the creation of the principles of the common law, yet it has been truly said not to be peculiar to the law of England," nor does it spring from the peculiar systems of kings, lords and commons. It is as ancient as Edward the Confessor, and is consistent with, nay, necessary to the universal equality in a republic.
>
> \* \* \* \* \*
>
> It has been recognized and adopted in its fullest extent in the courts of the United States, and in several of the States of this Union.
>
> \* \* \* \* \*
>
> It is an ample shield, covering alike the suitor and the witness, the juror and the judge, and protecting from impediment the administration of justice between man and man."
>
> Alderson on Judicial Writs & Process, page 245.

In fact, counsel for plaintiff recognize and admit the existence of this rule, both in their brief and in oral argument, but they contend that the rule does not apply when, as they state, *"the parties are brought to the state by criminal process."* They cite many cases in support of their contention and quote at length in their brief from four cases, to which we will now refer:

One was that of *Netograph Mfg. Co.* v. *Scrugham* (N. Y.) 90 N. E. 762, wherein, after recognizing the rule, the court said:

> "Since the obvious reason of the rule is to encourage voluntary attendance upon courts and to expedite the administration of justice, that reason fails *when a suitor or witness is brought into the jurisdiction of a court while under arrest or other compulsion of law.* Such a suitor or witness does nothing to encourage or promote voluntary submission to judicial proceedings. He comes because he cannot do otherwise. That seems to be the basis for the exception to the general rule of privilege which is illustrated in cases *where persons are brought into the jurisdiction of a court under extradition from other states or foreign countries."*

Another case cited is *White* v. *Underwood* (N. C.) 46 L. R. A. in which, on page 710, the court said:

> "The reason for the exemption of witnesses and jurors from civil arrest, and of non-resident parties and witnesses voluntarily attending court here, from service of any civil process, does not apply to parties *arrested* in criminal proceeding. (*Moore* v. *Green,* 73 N. C. 394, 21 Am. Rep. 470.) There is no public policy to encourage the latter."

From *ex parte Hendersen* (N. D.) 51 L. R. A. (N. S.) 328, they quote:

> "But where the party served *has been brought under extradition proceedings, or by force of criminal process, from the foreign state into ours,* to here answer for crime committed within our boundaries, if at all, the defendant is not voluntarily here. He

has no choice in the matter. Instead, he is here charged with being a menace to it. While presumed innocent, he is not fulfilling any office of good citizenship nor voluntarily promoting justice.''

And in the case of *Reid* v. *Ham* (Minn.) 21 L. R. A. 232, they rely on the following:

''One who by interstate rendition proceedings *is brought* to this state from another state or territory as a fugitive from justice is not exempt from civil prosecution while detained here under such proceedings.''

The emphasis given certain words in the foregoing quotations is ours in order to quickly point attention to the fact upon which each of the foregoing decisions is predicated, to-wit: that the suitor or witness was *brought* into the jurisdiction of the court *involuntarily*. The whole argument in the plaintiff's brief is built on the theory that the defendant, Phillips, was ''compelled to come here whether he wants to or not,'' and that he was ''brought back by compulsory process or by what amounts to a compulsory process.''

It would seem from the argument of counsel, as well as their citations, they have entirely overlooked the rule that, on a demurrer to defendant's pleas, the facts stated in the pleas are admitted as true. The allegations in the pleas distinctly state that the defendant, a non-resident of the state, voluntarily entered the state for the purpose of submitting himself to the jurisdiction of the circuit court of Roane county in the criminal case therein pending against him. Which being true (and we cannot question the truth of such statements on demurrer), the argument made and the citations quoted do not apply to this case, because the defendant was *not brought* back or compelled to come to West Virginia. The very authorities cited by counsel recognize a different rule where the attendance of one upon a trial in the state is *voluntary*.

''As a suitor or witness in a civil case he could not be compelled to attend or to submit himself to the jurisdiction of our courts. And his entering the state *must be voluntary*, either to aid others by

voluntarily appearing or testifying in their behalf, or to defend his own interests, and voluntarily submit his cause to our courts for arbitrament. In either case the common law, on grounds of public policy, has privileged him from harassment of civil proceedings, the interests of justice and public policy demanding it, and has thus encouraged the voluntary appearance of the non-resident who is under no compulsion to appear, to disclose, or to litigate in a civil case in our courts. In either or any event he is voluntarily aiding in the administration of justice.''

*Ex parte Hendersen, supra.*

But, contend counsel for plaintiff, while defendant was not actually arrested and brought to West Virginia, he came because ''he had to appear,'' and if he had not, ''he would have been extradited and brought here.'' Under the facts alleged in the pleas, we find no merit in this contention. From the allegations therein, this defendant was a non-resident of the state of West Virginia, had never been in the state of West Virginia at, or prior to, the time alleged in the indictment, and was not a fugitive from justice. He was, therefore, not subject to extradition. The law in such a case was settled in this court in our decision in *State* v. *Doeppe,* reported in 97 W. Va. 203, 124 S. E. 667:

> ''To be a 'fugitive from justice,' it is necessary that the person charged as such must have been actually present in the demanding state at the time of the commission of the crime, or, having been there, has then committed some overt act in furtherance of the crime subsequently consummated, and has departed to another jurisdiction. And, if the evidence be clear and convincing that the accused was not personally in the demanding state at the time of the commission of the offense charged, and has committed no prior overt act therein indicative of an intent to commit the crime, or which can be construed as a step in the furtherance of the crime afterwards consummated, he should be discharged.''

Eliminating from consideration the theory and argument of plaintiff that defendant was *brought* into West Virginia, because both theory and argument are untenable on demurrer

to the pleas, there remains no challenge in the case to defendant's right, under his pleas, to be shielded from the process herein.

The rule of the majority of states in this respect is stated in 21 Ruling Case Law, 1305, paragraph 50, and the text is amply supported by the vast number of cases cited in note 17, on page 1306. The voluminous brief of counsel for defendant lists many other authorities supporting this rule, but further citation is not deemed necessary in support of a principle established by the common law of England, by the early courts of Virginia (whose decisions are binding on us), and upheld by principles of right and justice.

The judgment of the lower court sustaining demurrers to the pleas will be overruled.

*Ruling reversed.*