MARGUERITE WANGLER, PLAINTIFF-APPELLANT, v. ED-
MUND NEWTON HARVEY, JR., DEFENDANT-RESPOND-
ENT.

Argued October 22, 1963—Decided December 16, 1963.

*Mr. Morris Brown* argued the cause for the appellant (*Messrs. Wilentz, Goldman & Spitzer,* attorneys; *Mr. Robert W. Lewandowski,* of counsel).

*Mr. Richard J. S. Barlow, Jr.,* argued the cause for defendant-respondent (*Messrs. Lenox, Giordano & Lenox,* attorneys).

The opinion of the court was delivered by

SCHETTINO, J. On October 16, 1962 defendant, executor and a beneficiary of his father's estate, was in the Mercer County Court House at the trial of a suit instituted by plaintiff against defendant as executor of the estate. As defendant was a nonresident, the suit was instituted by serving process upon the surrogate pursuant to the power of attorney required to be filed with the surrogate. *N. J. S.* 3A:12–14. While standing outside the courtroom, he was served with a summons and complaint in the present action which named him as defendant in his individual capacity.

Both actions arose out of an incident which occurred on premises owned by the father at the time of his death and devised to defendant and another subject to a life estate in decedent's widow. Plaintiff, a licensed real estate broker, alleges that she was injured while being escorted by defendant through the premises in question. Plaintiff was viewing the premises as preliminary to her attempts to sell them.

The trial court granted a motion by defendant to quash service of the summons on the ground that as a nonresident he was immune from such service since he was attending court proceedings. Plaintiff appealed. We certified the matter on our own motion before argument in the Appellate Division. *R. R.* 1:10–1(a).

The rule that a litigant is immune from service of process while attending court has ancient roots. The Year Books reveal that as early as Henry VI the immunity rule was originally conferred on and limited to residents. *Hatch v. Blissett,* 93 *Eng. Rep.* 338 (1714). Subsequently, the rule was extended to nonresidents, *Walpole v. Alexander,* 99 *Eng. Rep.* 530 (1782), and finally limited to the latter group. See *Fisher v. Bouchelle,* 134 *W. Va.* 333, 61 *S. E. 2d* 305 (*Sup. Ct. App.* 1950). The rule in its inception was limited to exemption from arrest, 33 *Harv. L. Rev.* 721, 722 (1920), but it has now been enlarged to encompass all forms of civil process. "Immunity of Non-Resident Participants in Judicial Proceeding from Service of Process — A Proposal for Renovation," 26 *Ind. L. J.* 459 (1950–51). The privilege, at first described as that of the courts, is now frequently regarded as belonging to the litigants as well. *Whited v. Phillips,* 98 *W. Va.* 204, 126 *S. E.* 916, 40 *A. L. R.* 83 (*Sup. Ct. App.* 1925).

In New Jersey as early as 1817, *Halsey v. Stewart,* 4 *N. J. L.* 366 [*Reprint* 426] (*Sup. Ct.* 1817), held that nonresidents were immune from civil process while necessarily going to, staying at or returning from court proceedings in New Jersey. The court stated the reasons behind the doctrine of immunity at *page 427* :

"* * * Courts of justice ought, everywhere, to be open, accessible, free from interruption, and to cast a perfect protection around every man who necessarily approaches them. The citizen, in every claim of right which he exhibits, and every defense which he is obliged to make, should be permitted to approach them, not only without subjecting himself to evil, but even free from the fear of molestation or hindrance. He should also be enabled to procure, with-

out difficulty, the attendance of all such persons as are necessary to manifest his rights. Now, this great object in the administration of justice would, in a variety of ways, be obstructed, if parties and witnesses were liable to be served with process while actually attending the court. It is often matter of great importance to the citizen to prevent the institution and prosecution of a suit in any court at a distance from his home and his means of defense; and the fear that a suit may be commenced there by summons will as effectually prevent his approach as if a *capias* might be served upon him."

*Halsey* thus based the immunity rule on two grounds: courts of justice must be accessible to all and protect those who approach them; and judicial administration must be free from the interruptions which will be caused by service of process. As pointed out by Mr. Justice Jacobs in *Korff v. G & G Corp.*, 21 *N. J.* 558, 563–564 (1956), *Halsey* followed earlier English precedents and has been adhered to by many later decisions both in New Jersey and elsewhere. 42 *Am. Jur., Process,* § 143 (1942). Later cases added additional reasons to buttress the rule: the doctrine is necessary to preserve the dignity of the court, *Randall v. Randall,* 14 *N. J. Super.* 110 (*Ch. Div.* 1951); the doctrine encourages attendance of persons necessary to the exercise of the judicial function, *Massey v. Colville,* 45 *N. J. L.* 119 (*Sup. Ct.* 1883); and finally the doctrine is grounded on sound public policy, *Michaelson v. Goldfarb,* 94 *N. J. L.* 352 (*Sup. Ct.* 1920).

The doctrine, although once narrowly limited to arrest cases, has undergone a rather significant expansion despite warnings that it should not be enlarged beyond the reasons upon which it was founded. *Lamb v. Schmitt,* 285 *U. S.* 222, 52 *S. Ct.* 317, 76 *L. Ed.* 720 (1932); Keeffe and Roscia, "Immunity And Sentimentality," 32 *Cornell L. Q.* 471 (1947); 26 *Ind. L. J.* 459, *supra.* In *Greer v. Young,* 120 *Ill.* 184, 11 *N. E.* 167, 168 (*Sup. Ct.* 1887) the court emphasized the limited nature of the doctrine:

"The arrest of a party to a suit by civil process being regarded as a breach of the defendant's privilege, the usual course was to appear in the cause in which the arrest was made, and procure a rule against the plaintiff and his attorney to show cause why the defendant should

not be discharged out of custody by reason of his alleged privilege, *upon his filing common bail.* The rule to show cause was always supported by affidavit setting up the fact of the arrest, and attendant circumstances. On the hearing the rule, depending upon the proofs, was either made absolute or discharged. If the former, the defendant, upon filing common or nominal bail, was discharged. And, if he had given special bail, the bail-bond was ordered to be surrendered and canceled. *Nevertheless, the defendant was in court, and was bound to answer the action."* (Latter emphasis added)

It has been said that the exemption is not a natural right but is, on the contrary, in derogation of the common law right of a creditor to sue his debtor wherever defendant may be found. 42 *Am Jur., Process,* § 139. See also *Paul v. Stuckey,* 126 *Ark.* 389, 189 *S. W.* 676, *L. R. A.* 1917B, 888 (*Sup. Ct.* 1916) ; *Murrey v. Murrey,* 216 *Cal.* 707, 16 *P. 2d* 741, 85 *A. L. R.* 1335 (*Sup. Ct.* 1932), *certiorari* denied 289 *U. S.* 740, 53 *S. Ct.* 658, 77 *L. Ed.* 1487 (1933) ; *Moseley v. Ricks,* 223 *Iowa* 1038, 274 *N. W.* 23 (*Sup. Ct.* 1937) ; *Neto-graph Mfg. Co. v. Scrugham,* 197 *N. Y.* 377, 90 *N. E.* 962, 27 *L. R. A., N. S.,* 333 (*Ct. App.* 1910). The tendency in some jurisdictions has been to restrict the privilege. *Nelson v. McNulty,* 135 *Minn.* 317, 160 *N. W.* 795 (*Sup. Ct.* 1917) ; *Greenleaf v. People's Bank,* 133 *N. C.* 292, 45 *S. E.* 638, 63 *L. R. A.* 499 (*Sup. Ct.* 1903). Indeed, we have recently expressed dissatisfaction with the immunity rule. *Korff, supra; cf. Grober v. Kahn,* 76 *N. J. Super.* 252 (*Ch. Div.* 1962).

The Supreme Court of Rhode Island in *Baldwin v. Emerson,* 16 *R. I.* 304, 15 *A.* 83 (1888), rejected the majority view stating:

"The question whether a party in attendance upon a court in the prosecution or defense of a suit is privileged from the service of a summons for the commencement of a suit against him is one upon which there has been a contrariety of decision. The general rule relating to protection from the service of process is that all persons who have any relation to a cause which calls for their attendance in court are protected from arrest while going to and attending court and returning. This protection, however, is not wholly, nor chiefly, the privilege of the person, but is granted in the interest of the public, that the courts may not be embarrassed or impeded in the conduct of their business. Hence it has generally been held that the protec-

tion is limited to exemption from arrest, and does not extend to the service of process, which does not interfere with or prevent the attendance of the person upon the court. [citations] In *Hayes v. Shields*, 2 *Yeates*, 222, and *Miles v. McCullough*, 1 *Bin.* 77, however, it was held that exemption should be granted from summons as well as arrest; the reasons assigned in the former case being that the party's attention to his own business in the suit depending would be distracted by the service, and he might be subjected to the inconvenience of attending an action at a distance from his place of abode, contrary to the wise indulgence of the law. In some of the cases the question whether non-residents of the state attending court are entitled to protection from the service of a writ by summons for the commencement of a suit has been considered. [at *p.* 83]

\* \* \* \* \* \* \* \*

While we concede the force of the reasons advanced for protecting non-resident witnesses from the service of a summons against them for the commencement of a suit, *eundo, morando, et redeundo*, we are not convinced of the sufficiency of the reasons assigned for the exemption of non-resident suitors from such process. We think it would rarely happen that the attention of a non-resident plaintiff or defendant would be so distracted by the mere service of a summons from the immediate business in hand in prosecuting or defending a pending suit that the interests of justice would suffer in consequence, or that the liability to such service would often deter them from prosecuting or defending their just claims or rights. The reasons assigned for the exemption would apply equally as well to resident as to non-resident suitors, and it has never been deemed necessary to exempt resident suitors from the service of a summons, so far as we have been able to find, except in the single state of Pennsylvania. We think these reasons are fanciful, rather than substantial. We are of the opinion, therefore, that a non-resident suitor attending court in the prosecution of a suit is not exempt from the service of a summons against him in another suit." [at *pp.* 84–85]

We agree that the reasons for the rule are more fanciful than real.

■■ Unquestionably a principle which favors free access to our courts is a salutary one. But as stated in 26 *Ind. L. J., supra,* at *p.* 459: "One of the anachronisms of our present 'procedural' law is the favoritism, quite singular in Anglo-American jurisprudence, with which a nonresident who enters a state to participate in a judicial proceeding is clothed." The principle of immunity allows a nonresident to defend suits in our State without subjecting himself to another suit, while it prevents a resident defendant from

claiming such protection. Historically, both categories of defendants would be protected, but today the resident defendant is not. *Fisher, supra,* 61 *S. E.* 2*d,* at *pp.* 307–308.

We are not impressed by the argument that the immunity rule prevents disruption of judicial administration in that the service of the summons distracts a suitor and deters him from adequately protecting his interests. Admittedly, such process causes some distraction, but the distraction will occur whether the party served is nonresident or resident. We no longer consider such distraction a basis for granting immunity to residents and we can see no reason for making a distinction because of nonresidency.

That immunity was necessary to maintain the dignity of the court was historically well-founded, for an arrest of a litigant for whom the court was waiting would adversely affect the functions of a court. In that sense the court's dignity might be offended. However, see Keeffe and Roscia, *supra,* 32 *Cornell L. Q.,* at *p.* 477. But when physical restraint is not involved in the service of a summons, there can be no conflict with the dignity of any court.

The most persuasive argument for the immunity rule is that the privilege is granted to encourage attendance of litigants whose appearances are necessary to the trial of the cause. 42 *Am. Jur., Process,* § 142. It is argued that unless immunity is granted to a litigant, he might be deterred from attending through fear of being subjected to new litigation. Thus, the court's search for truth might be frustrated and an injustice might result.

In the case of the nonresident plaintiff, the inducement to sue in a foreign jurisdiction is the hope of obtaining judgment, not immunity. The forum is his choice and it is his own interest which causes him to come. No sound reason has been advanced why he should receive a special treatment not accorded a resident plaintiff. See *Korff, supra,* 21 *N. J.* 558; *Grober, supra,* 76 *N. J. Super.* 252.

As to the nonresident defendant, he too is not motivated by altruism but rather by the desire to defend the action. He

has exercised a choice. His appearance is governed by selfish —although proper—considerations. He must decide whether the pains of other litigation are more severe than the rigors of a default judgment in the first suit.

The final argument used to support the immunity rule is "public policy." Few decisions in the immunity area have defined the meaning of that phrase. Generally speaking, the public policy reference would seem to be nothing more than a catch-all manner of enunciating all the arguments previously noted.

Conversely, we note that the granting of immunity conflicts with several important policy considerations. As noted above, an exemption from process derogates the right of a creditor to subject his debtor to suit in any jurisdiction where he may be found. *Netograph Mfg. Co. v. Scrugham, supra,* 90 *N. E.,* at *p.* 963. Furthermore, the immunity shifts the burden of traveling to a foreign jurisdiction from the nonresident to the resident party.

The doctrine of immunity moves in a direction wholly inconsistent with today's concept of justice. We have not hesitated to correct legal doctrines in the light of modern needs. In *State v. Culver,* 23 *N. J.* 495, 505 (1957), we said:

"One of the great virtues of the common law is its dynamic nature that makes it adaptable to the requirements of society at the time of its application in court. There is not a rule of the common law in force today that has not evolved from some earlier rule of common law, gradually in some instances, more suddenly in others, leaving the common law of today when compared with the common law of centuries ago as different as day is from night. The nature of the common law requires that each time a rule of law is applied it be carefully scrutinized to make sure that the conditions and needs of the times have not so changed as to make further application of it the instrument of injustice. Dean Pound posed the problem admirably in his *Interpretations of Legal History* (1922) when he stated, 'Law must be stable, and yet it cannot stand still.'"

We conclude that the problem of immunity is best disposed of by the application of the doctrine of *forum non conveniens.* Under this concept a court can prevent the im-

position upon its jurisdiction of the trial of causes when it determines that for convenience of the litigants and witnesses, and in the interest of justice, the action should be instituted in another forum. The doctrine presupposes at least two forums in which the defendant is amenable to process and furnishes criteria for a choice between such forums. *Gulf Oil Corp. v. Gilbert,* 330 *U. S.* 501, 67 *S. Ct.* 839, 91 *L. Ed.* 1055 (1947). The concept is well established in New Jersey. We have recognized that the doctrine is principally concerned with preventing harassment and vexation to the defendant, *Gore v. United States Steel Corp.,* 15 *N. J.* 301 (1954), *cert.* denied 348 *U. S.* 861, 75 *S. Ct.* 84, 99 *L. Ed.* 678 (1954); *Vargas v. A. H. Bull Steamship Co.,* 25 *N. J.* 293 (1957), *cert.* denied 355 *U. S.* 958, 78 *S. Ct.* 545, 2 *L. Ed. 2d* 534 (1958), but, as pointed out by Chief Justice Weintraub in *Starr v. Berry,* 25 *N. J.* 573, 587 (1957) : "It is not enough that a defendant will be seriously inconvenienced; it must also appear that a transfer will not result in significant hardship to the plaintiffs."

 Pursuant to the usual practice under a motion to dismiss based on *forum non conveniens,* the granting of immunity will be considered an exception rather than the rule. The court will retain jurisdiction unless there is an affirmative showing that it would violate traditional concepts of fair play and substantial justice to subject the defendant to its jurisdiction. If unfairness is shown, the court might dismiss outright or condition its dismissal upon certain assurances by the defendant. *Vargas, supra,* 25 *N. J.,* at *p.* 295.

 A point is made that the revision of the immunity rule should be prospective in its application. Such a contention would seem to be based on a concept of reliance. We find the suggestion without merit in the present case. It is doubtful that any defendant could justifiably rely on the rule after the expressions of dissatisfaction with the immunity concepts which appear in *Korff* and *Grober, supra.* In any event there is nothing in the record to indicate that the defendant did place any actual reliance on the doctrine. Under such cir-

cumstances there is no reason for declining to apply the usual rule under which the overruling of a decision has retrospective effect. See *Dalton v. St. Luke's Catholic Church*, 27 *N. J.* 22, 26 (1958) ; *Arrow Builders Supply Corp. v. Hudson Terrace Apts.*, 16 *N. J.* 47, 49 (1954).

We do not foreclose an inquiry in the present case as to whether the suit commenced against defendant in his capacity as executor was a device to lure the defendant into the jurisdiction. If this was the purpose of the first suit, as the defendant's brief suggests, the trial court should dismiss this action. *Williams ads. Reed,* 29 *N. J. L.* 385 (*Sup. Ct.* 1862) ; 33 *Harv. L. Rev., supra,* 722.

Reversed and remanded.

PROCTOR, J. (concurring). The purpose of the immunity doctrine is to avoid interference with the progress of a cause by the service of process in other suits which would prevent or tend to discourage the attendance of those whose presence is necessary in the pending cause. *Lamb v. Schmitt,* 285 *U. S.* 222, 52 *S. Ct.* 317, 76 *L. Ed.* 720 (1931). Assuming, as I must, that plaintiff in good faith initiated her suit against the defendant in his capacity as an executor, and assuming also that the defendant might have been discouraged from attendance if immunity from service were withheld, I believe that justice would be defeated by the grant of immunity. Here, the plaintiff seeks to serve the defendant personally on a claim arising out of the same occurrence which formed the basis of the original action. Thus, the cause pending before the court was not subjected to possible hindrance or delay by service of process in some *unrelated* suit. Cf. *Lamb v. Schmitt, supra,* 285 *U. S.,* at *p.* 227, 52 *S. Ct.,* at *p.* 319, 76 *L. Ed.,* at *p.* 724. But, on the contrary, withholding immunity in the present case is consistent with our firm commitment to the enlightened policy that just and expeditious disposition at one time and place of all matters in controversy between the parties is to be encouraged.

Since I believe immunity in the present case should be withheld on the ground that the claim involved arises out of the same occurrence, it is unnecessary to reconsider at this time the full scope of the doctrine of immunity from service of process which has so long been the law of this State. *Halsey v. Stewart*, 4 *N. J. L.* 366 [*Reprint* 426] (*Sup. Ct.* 1817). See *Korff v. G. & G. Corp.*, 21 *N. J.* 558, 563–564 (1956), and cases there cited. It appears to me that the opinion of the majority goes much further than is necessary or desirable for the disposition of this case.

Francis, J. (dissenting). Defendant Harvey is a resident of the State of New York. He was a resident of that state at all times pertinent to these proceedings.

Edmund Newton Harvey, defendant's father, a resident of New Jersey, died in 1959 (the exact date does not appear in the record), leaving a last will which was admitted to probate in Mercer County on August 3, 1959. Real property, out of which this negligence action arose, was devised to defendant and his brother, Richard Bennet Harvey, subject to a life estate in decedent's wife, Ethel Browne Harvey. Defendant was named executor in the will and he applied to the surrogate for appointment as such.

By virtue of *N. J. S.* 3A:12–14 Harvey could not act as executor unless he agreed to file and did file a power of attorney designating the surrogate his agent for the purpose of receiving process in any action against the estate. The statute provides:

"Every fiduciary, whether or not a resident within this state, who is granted letters testamentary * * * within this state * * * and power to act within this state in his fiduciary capacity shall, at the time of the grant, or before he undertakes to perform his duties under said authority or power, file a power of attorney with the surrogate of the county or clerk of the court granting such letters or authority and power. The power of attorney shall be duly executed in writing, shall set forth the post-office address, street and number, of the fiduciary and, by sufficient language, constitute the surrogate or clerk with whom the same is filed, and his successors in office, his true and lawful attorney to receive process affecting the estate in charge of the fiduciary, or any interest therein, with the same force

and effect as if the process were duly served on the fiduciary within this state."

Process as used therein is defined, among other things, as any summons "that may lawfully be issued out of any court of this state against such fiduciary in any proceeding affecting the estate which he may represent * * *." *N. J. S.* 3A:12–13; 6 *N. J. Practice (Clapp, Wills and Administration)*, § 792, *pp.* 395–397 (1962).

At the time of appointment as executor Harvey signed the form of power of attorney prepared and presented to him by the surrogate. He thereby appointed the surrogate his "attorney, upon whom may be served all process affecting the aforesaid estate, or any interest therein, whereof I am the executor. And [he further agreed] that any process against the aforesaid estate, so served, shall be of the same effect as if duly served upon me within this state." The form is the one customarily provided for the purpose by the various surrogates. See 8 *N. J. Practice (Clapp, Wills and Administration)*, § 2072, *p.* 21 (1962); *Kocher, New Jersey Probate Law, pp.* 944–945 (1916).

This power of attorney created a limited agency. It constituted the surrogate a special agent of Harvey as executor. It made Harvey, as a nonresident executor, amenable to substituted service of process issuing out of the New Jersey courts in suits brought against the estate he represented. It did not render him in his individual capacity subject to the jurisdiction of our courts or their process in any cause of action against him personally.

Plaintiff's first suit was against the decedent's estate. Harvey was named defendant in his capacity as executor and process was served on the surrogate as his special agent for the purpose. He was thus involuntarily brought into the New Jersey Superior Court to defend a charge against the estate that plaintiff was injured because of the negligence of the estate while she was on its property in New Jersey as an invitee. Upon being served in the fashion indicated, defendant, in his official capacity, could not ignore the proceeding.

He was under a duty to the estate to defend the action, and seek exoneration of the estate, particularly because title to the real estate involved had passed under the will immediately on his father's death to his brother and himself, subject to their mother's life estate.

When Harvey appeared in the Superior Court on October 16, 1962 for the trial of the action against the estate, he did not do so as a voluntary suitor seeking the use of New Jersey judicial facilities. He was there involuntarily and solely in a representative capacity, an unwilling suitor brought there by substituted compulsory process served upon his agent specially authorized for the purpose. For as long as New Jersey has had a judicial system it has been the rule that a nonresident brought into this State involuntarily as a defendant or as a witness in a judicial proceeding is immune from service of process in any other suit here while going to the place of trial of the case, during the trial and while returning home. *Halsey v. Stewart*, 4 *N. J. L.* 366 [*Reprint* 426] (*Sup. Ct.* 1817). It was said that "[c]ourts of justice ought, everywhere, to be open, accessible, free from interruption, and to cast a perfect protection around every man who necessarily approaches them." *Id.*, at *p.* 427.

The omnibus character of the immunity has been criticized as being unfair to a local resident suffering tortious injury in this State at the hands of a nonresident who then returns home leaving the injured person remediless unless he pursues the wrongdoer into the foreign jurisdiction and institutes suit there. *Korff v. G. & G. Corp.*, 21 *N. J.* 558 (1956). See, Keefe & Roscia, "Immunity and Sentimentality," 32 *Cornell L. Q.* 471 (1947); Note, "Immunity of Non-Resident Participants in a Judicial Proceeding from Service of Process—A Proposal for Renovation," 26 *Ind. L. J.* 459 (1951). The suggestion frequently made is that if a nonresident tortfeasor returns to the local scene of his wrongdoing, he ought to be regarded as subject to service of local process at the hands of the injured resident (unless his return is induced by fraud in order to accomplish the service), regardless of whether he

is present to attend a judicial proceeding as a party or as a witness.

Partially in response to that suggestion, our courts have declared that when nonresident plaintiffs come here voluntarily, avail themselves of our judicial facilities and seek some affirmative relief, they have no immunity against the filing of related counterclaims or cross-claims in the proceeding. *Korff v. G. & G. Corp., supra.* But no case has gone so far as to sanction service of process in a personal tort action on a nonresident defendant who has been brought here involuntarily and solely in a representative capacity to defend a suit instituted against his principal. In fact, in *Korff,* this Court declared the principal cases relied upon to defeat the service of the counter-claims and cross-claims were "readily distinguishable" since the plaintiffs entered New Jersey voluntarily and sought affirmative judicial remedies here as contrasted with nonresidents who were in our courts as unwilling suitors under compulsory process. 21 *N. J.,* at *pp.* 570–572.

There is much to be said, of course, in favor of opening the doors of our courts as wide as the United States Constitution will permit to enable New Jersey residents who are injured here by nonresident visitors to prosecute their claims in this jurisdiction. The Legislature has moved beneficially in that direction with respect to nonresident motorists who cause injuries while using our highways. *N. J. S. A.* 39:7–2. This Court, by rule, has authorized substituted service upon nonresident corporations, partnerships or associations to aid residents in the prosecution of causes of action arising here, if, when the cause of action arose, the nonresident had the necessary contacts in this State to satisfy the requirements of due process. *R. R.* 4:4–4(d), (e) and (f). But as to nonresident individuals as distinguished from business entities, a much more restrictive provision was adopted. See, *R. R.* 4:4–4(h).

Subsection (h) of *R. R.* 4:4–4 authorizes service:

"Upon an individual engaged in a business within the State in an action arising out of the conduct of such business, by serving, in the

manner prescribed in paragraph (a) [personal service or "by delivering a copy thereof to a person authorized by appointment or by law to receive service of process on his behalf;"] the individual, or a managing or general agent of the individual employed in such business; or if service cannot be made upon any of the foregoing, by serving any servant of the individual within this State acting in the discharge of his duties in connection with such business." (Insertion added)

Although it does not say so expressly, this subsection was probably designed to subject a nonresident who is engaged in business in this State to conventional personal service in suits on causes of action arising here, or to service on a local agent or employee working here in the business, or to service on a person authorized by appointment or by law to receive process on his behalf. There is no real indication that the purpose of this rule was to authorize substituted service of process in the home state of a nonresident in a cause of action arising from an isolated tort committed in New Jersey. In some jurisdictions such service may be made (and its constitutionality has been sustained) on a nonresident who has caused an event to occur in the state out of which the claim arose. See, *Executive Properties, Inc. v. Sherman*, 223 *F. Supp.* 1011 (*D. C. Ariz.* 1963).[1]

In spite of the failure of this Court to adopt a specific rule of practice to permit the kind of service made in this case,

_____

[1] On December 9, 1963 the Court amended *R. R.* 4:4-4 by adding a new subsection as follows:

"(j) Whenever it shall appear by affidavit of the attorney for the plaintiff or of any person having knowledge of the facts, that, after diligent inquiry and effort, an individual cannot be served in this State under any of the preceding paragraphs of this rule, then, consistent with due process of law, service may be made by mailing, registered mail, return receipt requested, a copy of the summons and complaint to the individual addressed to his dwelling house or usual place of abode. Where service is attempted to be made by registered mail but the same is not effected, either by reason of the addressee refusing to accept delivery or if for any reason delivery cannot be made, then service may be made outside the State as provided in Rule 4:4-5(a) upon any person upon whom service is authorized by the law of this State or of the state wherein service is effected."

The new rule becomes effective on January 2, 1964.

or to furnish any substantial indication in previous cases of an intention to overrule or to depart from the controlling century-and-a-quarter-old immunity doctrine applicable here, the majority of my colleagues suddenly cast aside the immunity and visit a new rule retrospectively upon this defendant.

If the Court wishes to wipe out a nonresident's freedom from service of process whenever he is in this State as a party litigant or as a witness in a judicial proceeding in order to enable residents to prosecute their local tort claims in our tribunals, ample justification exists for such a course. I agree also that use of the new procedure in a given case should be sanctioned only after a consideration of all the facts and weighing the inconvenience to the nonresident in terms of fair play and substantial justice. In other words, the propriety of the service should be tested by all the considerations that underlie the *forum non conveniens* doctrine.

But, in my judgment the overruling of the immunity principle should be done prospectively and not applied to this case. To subject this defendant to loss of his immunity is to offend traditional notions of fair play and substantial justice. He was brought into New Jersey by a form of substituted service which was the *quid pro quo* he gave for his appointment as executor. That *quid pro quo* was a consent to be amenable to our courts in his representative capacity whenever his special agent was served with process on a claim against the estate. When served in that fashion he came here as executor to perform the duty he owed, *i. e.,* to defend the estate. No other choice was fairly open to him. In fact it was against his personal interest to perform that duty because presentation of proof to exonerate the estate under the facts relating to the claim might reveal his own possible liability.

The problem of liability to the plaintiff for a fall on the premises involved has a number of aspects. Under the decedent's will his widow was given a life estate in the property. Generally a life tenant has the duty to make repairs thereto which become necessary because of ordinary wear and tear. *Green v. Green,* 134 *N. J. Eq.* 479 (*Ch.* 1944) ; *Mulford v.*

*Mulford,* 42 *N. J. Eq.* 68 (*Ch.* 1886); *Dey v. Codman,* 39 *N. J. Eq.* 258 (*Prerog.* 1884); 5 *N. J. Practice (Clapp, Wills and Administration),* § 446, *pp.* 706–707 (1962); 5 *Page, Wills (Rev. Ed.* 1962), § 39.3, *pp.* 53–61. The fee in remainder was devised to defendant and his brother, and it passed to them immediately on the testator's death. If the ownership presents a basis for liability under the circumstances of the case, the responsibility would probably rest on both brothers as joint tortfeasors. Or the liability, if any, might be against the life tenant and remaindermen jointly. In view of these contingencies, it seems unfair to me to deprive defendant of an age-old immunity from service of process and in effect impose on him the burden of seeking contribution or indemnity from his mother or brother or both, if the plaintiff recovers against him. When defendant accepted appointment as executor he agreed to be subject to service of process against the estate. He honored that agreement and came here to defend a suit brought against it. The decision of the majority in effect now adds retroactively an additional clause to his agreement, *i. e.,* if his agent is served and Harvey responds by entering our courts to defend in his representative capacity, he opens himself to service of process in a cause of action which may exist against him personally. But for more than 125 years, we have been telling nonresidents they make no such commitment. The defendant in good faith made and kept his agreement with New Jersey. We can keep ours by giving only prospective scope to the new rule being announced, *Great Northern Ry. Co. v. Sunburst Oil & Ref. Co.,* 287 *U. S.* 358, 53 *S. Ct.* 145, 77 *L. Ed.* 360 (1932); *Johnson v. Stoveken,* 52 *N. J. Super.* 460 (*App. Div.* 1958); *City Affairs Committee of Jersey City v. Board of Com'rs of Jersey City,* 134 *N. J. L.* 180, 188 (*E. & A.* 1946) (*dictum*); cf. *Arrow Builders Supply Corp. v. Hudson Terrace Apartments, Inc.,* 16 *N. J.* 47 (1954); "Retroactive Operation of Decisions," 18 *Colum. L. Rev.* 230, 251 (1918), or by holding under the circumstances of the case

that the interests of substantial justice are not advanced by enforcing the new rule against him.

Accordingly, I vote to affirm the order of the trial court. Justice HANEMAN joins in this dissent.

PROCTOR, J., concurring in result.

*For reversal* — Chief Justice WEINTRAUB, and Justices JACOBS, PROCTOR, HALL and SCHETTINO—5.

*For affirmance*—Justices FRANCIS and HANEMAN—2.